**S.D. WARREN COMPANY, A DIVISION OF SCOTT PAPER CO.,**
Plaintiff, Appellee,

v.

**UNITED PAPERWORKERS' INTERNATIONAL UNION, AFL–CIO, LOCAL 1069, Defendant, Appellant.**

No. 87–1570.

United States Court of Appeals,
First Circuit.

Heard Dec. 10, 1987.

Decided May 19, 1988.

Stephen P. Sunenblick, with whom Sunenblick, Reben, Benjamin & March, Portland, Me., was on brief, for defendant, appellant.

S. Mason Pratt, Jr., with whom Elizabeth Pearce Hunt and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., were on brief, for plaintiff, appellee.

Before COFFIN, BREYER and TORRUELLA, Circuit Judges.

BREYER, Circuit Judge.

Appellant, United Paperworkers Union, and appellee, S.D. Warren, have entered into a collective bargaining contract that expressly provides that the "Company reserves the sole right to ... discharge employees for proper cause." A different agreement between them, embodied in Mill Rule 7, says (in Part A) that "possession, use or sale on Mill property of intoxicants, marijuana, narcotics or other drugs" is "considered cause[ ] for discharge." The arbitrator in this case stated that he was persuaded "that the Company ... clearly obtained sufficient evidence that the grievants [whom the Union here represents] are guilty of 7A violations." The arbitrator also "concurs ... that arbitrators generally

consider synonymous the language 'proper cause,' 'just cause' or 'cause.' "

Given the contract's express language and the arbitrator's findings, we must take the following as given:

I. The contract says the "Company reserves the *sole right* to ... discharge employees for proper cause." (Emphasis added.)

II. The contract should be read as if it said, "violation of Mill Rule 7A is considered [*proper*] *cause* for discharge." (Emphasis added.)

III. The grievants violated Mill Rule 7A.

This court recently held in a companion case, *S.D. Warren Company v. United Paperworkers' International Union*, 845 F.2d 3 (1st Cir.1988) (*Warren I*) that this very contract gives the Company the "sole right" to decide whether to discharge an employee who violates Rule 7A, and the contract does not permit the arbitrator to take that right from the Company. In so holding, this court distinguished the recent, similar Supreme Court case, *United Paperworkers Union, AFL–CIO v. Misco*, — U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), and there are critical distinctions between *Misco* and the cases before us:

(1) As the Supreme Court pointed out, the issue in *Misco* was not the interpretation of an "exclusive management rights" clause; it was whether the employees had violated Company Rule II.1 (the anti-drug-possession equivalent of Rule 7A). The specific issue was whether, under the contract, the arbitrator could limit the evidence before him to the evidence that had been before the employer at the time of discharge (*i.e.*, could the arbitrator refuse to take account of drugs found in the employee's car after his discharge)—a matter on which the contract was silent. *Misco*, 108 S.Ct. at 371.

(2) The Supreme Court specifically said in *Misco* that its result might have been different had the issue before it there been the same as the issue before us here, namely, whether the contract gives to the Company the *sole right* to discharge one who violates a particular Company rule. The Court wrote:

The parties, of course, may limit the discretion of the arbitrator ... and *it may be*, as the company argues, that under the contract involved here, it was within the unreviewable discretion of management to discharge an employee *once a violation of Rule II.1 was found.* But the parties stipulated that the issue before the arbitrator was whether there was "just" cause for discharge and the arbitrator ... found that there was not. *Misco*, 108 S.Ct. at 372 (emphasis added).

(3) The contract here more clearly reserves to the Company the power to discharge one who violates the Company rule than did the *Misco* contract. The contract here uses the words "sole right;" as far as the Supreme Court's opinion reveals, the *Misco* contract did not contain similar language. The contract here contains other clauses also suggesting that, in respect to the cases before us, the arbitrator correctly found a violation of Mill Rule 7A and that the contract means what it says. (Mill Rule 8, for example, unlike Mill Rule 7, lists "Causes for discharge after appropriate warning.")

Given these differences, the arbitrator's findings, and the difficulty one has imagining how one could use the English language to state more clearly that the Company retains the prerogative to decide whether or not to discharge one who violates Mill Rule 7, this court has concluded that the contract here falls within *Misco*'s extremely narrow exception permitting a court to find an arbitrator's interpretation of a contract outside the authority delegated to him by the contract. *Misco*, 108 S.Ct. at 371. Given this holding in the companion case (*Warren I*), the arbitrator's findings of Rule 7A violations, substantiated in the record before us, bind the Union here as well. Our examination of the record here reveals no significant difference between this case and the companion case.

The judgment of the district court is, therefore,

*Affirmed.*

COFFIN, Circuit Judge, concurring.

I concur in the disposition of this case (*Warren II*) only because the panel opinion in the companion case, *S.D. Warren Company v. United Paperworkers International Union*, 845 F.2d 3 (1st Cir.1988) (*Warren I*), has become the law in this circuit and therefore controls the instant case. Inasmuch as there is no guarantee that there will be a rehearing en banc of *Warren I*, where I could express my views, I choose this vehicle to do so. With all due respect to my colleagues on the panel in *Warren I* and the majority in this case, in my view, the Supreme Court's opinion in *United Paperworkers International Union v. Misco, Inc.*, 108 S.Ct. 364 (1987)—reiterating the substantial deference courts must give to the decisions of labor arbitrators—requires that we affirm, rather than vacate, the arbitration awards in *Warren I* and *II*.

I set forth, in some detail, the reasoning of the arbitrator's decision in *Warren II*, which closely tracked that of the arbitrator in *Warren I*. I then turn to an examination of why I believe *Misco* requires a different outcome in both *Warren I* and *II*.

## I.

The factual background for *Warren I* is thoroughly documented *S.D. Warren Company v. United Paperworkers Interna-tional Union*, 815 F.2d 178 (1st Cir.1987), *vacated and remanded*, —— U.S. ——, 108 S.Ct. 497, 98 L.Ed.2d 496, and needs no repetition here. The parties and the provisions of the collective bargaining agreement at issue in that case and in *Warren II* are identical. In *Warren II*, like *Warren I*, S.D. Warren discharged certain individuals when, as a result of an undercover investigation, it discovered that they had possessed, consumed or sold intoxicating substances on company property in violation of Mill Rule 7(a). The United Paperworkers International Union brought grievances on behalf of the employees, and, like *Warren I*, the union and the company eventually submitted to arbitration the question of whether the Company violated the collective bargaining agreement in discharging the employees and if so, what should be the remedy.

In both cases, the arbitrator found that the issue presented raised questions concerning the construction of Article 4 and Mill Rule 7 in the agreement.[1] The arbitrator in *Warren II* concluded that the controlling provision of the contract was Article 4's provision that the company reserved the right to discharge employees for "proper cause." App. at 110. He determined that Mill Rule 7 was a specific provision that modified the company's right to discharge for proper cause, but he agreed with the arbitrator in *Warren I* that the

---

1. For the purpose of reference I set forth the language of the two provisions. Article 4, entitled "Management Rights," provided:

   The Company reserves the sole right to manage the business of the Company and its Cumberland Mills operation and to direct the working force. This right includes ... the right to ... discipline, suspend or discharge employees for proper cause.... App. at 18.

   Mill Rule 7, entitled "Causes for Discharge," provided:

   In any organization, certain rules of conduct must be observed by the members for the good of all.

   Violation of prescribed rules are cause for disciplinary action of varying degrees of severity.

   Violations of the following rules are considered causes for discharge.

   a) Possession, use or sale on Mill property of intoxicants, marijuana, narcotics or other drugs....

   b) Smoking upon Company's premises except in authorized smoking areas, as provided under "Smoking."

   c) Unauthorized destruction or removal of the Company's property.

   d) Refusal to comply with Company rules.

   e) Willful disobedience or insubordination.

   f) Neglect of duty.

   g) Disorderly conduct.

   h) Dishonesty.

   i) Obvious sleeping on duty.

   j) Deliberate waste of Company time and/or material.

   k) Leaving the Mill while on duty except by permission of Foreman....

   l) Violation of certain rules specifically noted in the Mill Safety Rules.

   m) Incarceration after being sentenced.

   n) Giving or taking a bribe of any form to obtain work, retain a position, or obtain any preferential treatment whatsoever.

language of Mill Rule 7 concerning such a right was ambiguous. App. at 110–1.[2] Thus, having found any modification of Article 4 by the language in Mill Rule 7 to be unclear, he considered afresh the meaning of the term "proper cause" in Article 4. App. at 111.

To make that determination, the arbitrator in *Warren II* resorted to a test for "just cause," "proper cause," or "cause" for discharge—all of which he found synonymous —that arbitrators generally apply and that the Company recognized, App. at 86–87, as applicable to this case:

> Whether just cause for discharge exists may be determined by answers to the following questions. "No" answer to one or more normally signifies that just and proper cause did not exist.
>
> (1) Did employer forewarn employee of possible consequences of conduct?
>
> (2) Was rule or order involved reasonably related to the orderly, efficient, and safe operation of business?
>
> (3) Before administering discipline, did employer make effort to discover whether employee did, in fact, violate or disobey rule or order?
>
> (4) Was employer's investigation conducted fairly and objectively?
>
> (5) In investigation, did employer obtain sufficient evidence or proof that employee was guilty as charged?

> (6) Has employer applied its rules, orders, and penalties evenhandedly and without discrimination?
>
> (7) Was degree of discipline reasonably related to the offense and the employee's record?

App. 111–12. In addition, the arbitrator pointed out that "absent express contractual language *mandating* discharge for egregious conduct or clear agreement/understanding by the parties, consistently effected, that a specific offense warranted discharge upon a first occurrence, arbitrators generally require evidence [that] the employee is incorrigible." App. at 112. The arbitrator in *Warren I* applied similar criteria.[3]

Upon analyzing the evidence before him, the arbitrator in *Warren II* answered criteria 1, 3, 6, and 7 in the negative. Significantly, regarding criterion 6, he analyzed the Company's past practices in terms of the penalties it imposed for Rule 7 violations and found that the company had suspended employees for such violations, after warnings—"the longest suspension was for 6 months and the average 9.7 days." App. at 118. Only in one instance, occurring almost ten years before the Company hired the five employees whose discharges were at issue, had the company ever summarily discharged an employee for a first infrac-

---

2. As the district court explained in *Warren I*:

[T]he Arbitrator found that the contract did not unequivocally state that the conduct listed in Mill Rule 7(a) was *proper* cause for discharge as required by the Management Rights [Clause].... She reasoned that, while Rule 7 is entitled "Causes for Discharge," it does not say whether such causes *"will* be" or *"may* be" grounds for termination.

....

The Arbitrator also found that the Company's Safety Policy handbook, albeit a unilateral statement of the Company, did not remove the ambiguity of the Agreement. The handbook states:

... violations of rules printed in red *may* mean immediate discharge. Violations of other rules may be cause for discharge after appropriate warning.

(Emphasis added.) Language [in the handbook] tracking both Mill Rules 7(a) and 8(a), the latter of which, according to the Agreement, requires at least a warning prior to discharge, are printed in red.

Consequently, the Arbitrator concluded that Mill Rule 7 was ambiguous as to whether employees *must* be terminated and that it did not clearly state the agreement of the parties as to what constitutes proper cause for discharge.

*S.D. Warren Company v. United Paperworkers International Union*, 632 F.Supp. 463, 466 (D.Me.1986). Adopting the rationale of the arbitrator in *Warren I*, the arbitrator in *Warren II* similarly concluded that the language "causes for discharge" in Mill Rule 7 was ambiguous.

3. The arbitrator in *Warren I* relied on: (1) the prior practice of the company, including the nature of the penalties for past offenses and the notice or warning given to employees before the imposition of sanctions in those cases, (2) the sufficiency of the evidence presented against each employee, (3) the reasonableness of the penalty imposed in relation to the individual employee's conduct and disciplinary record. *S.D. Warren Co.*, 89 Lab.Arb. (BNA) 688, 701, 710 (Sept. 19, 1985) (Gwiazda, Arb.)

tion of Mill Rule 7. Thus, the arbitrator found "the instant discharges for first offenses of Mill [R]ule 7(a) discriminatorily severe." App. at 119. Finding that none of the employees had previously violated Mill Rules or been disciplined for conduct in the workplace, the arbitrator also concluded that the degree of discipline was overly severe (criterion 7). *Id.* The arbitrator in *Warren I* made similar findings concerning the employees in that case upon applying similar criteria. *See* 89 Lab.Arb. at 704.

Having made those findings, the arbitrator in *Warren II* concluded that the employees' conduct was not "proper cause" for discharge, and that the Company had, therefore, violated Article 4 in discharging the employees. As a remedy the arbitrator reinstated the employees to their positions. He suggested that some disciplinary action was warranted, but left it to the parties to negotiate the appropriate remedies while retaining jurisdiction in the event that his assistance was called for. The arbitrator in *Warren I*, although similarly finding that the Company did not have "proper cause" to discharge certain employees for conduct violative of Mill Rule 7(a), changed the penalties from discharge to suspension.

## II.

In *Misco*, the Supreme Court addressed, in some detail, the general question of "when a federal court may refuse to enforce an arbitration award rendered under a collective-bargaining agreement." 108 S.Ct. at 367.[4] In the course of that discussion, it reiterated longstanding principles concerning the special deference courts owe to the decisions of labor arbitrators. The Court explained:

> [I]t must be remembered that grievance and arbitration procedures are part and parcel of the ongoing process of collective bargaining. It is through these processes that the *supplementary rules of the plant* are established. As the Court

has said, the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is *even arguably* construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.

108 S.Ct. at 371 (emphasis added). We have precisely this situation in both *Warren I* and *II:* arbitrators *arguably* construing the agreement and acting within the scope of their authority. This is so because (a) the terms of the agreement pertaining to the Company's right to discharge the employees for their conduct were *arguably* ambiguous and (b) the arbitrators correctly resorted to "supplementary rules of the plant" to construe those terms.

### The Arguable Ambiguity in the Term "Causes for Discharge"

In both *Misco* and *Warren I* and *II*, the arbitrators found ambiguity in virtually identical company rules, providing that the possession or consumption of intoxicants on company property by employees would be cause for discharge. At issue in *Misco*, was the paper company's Rule II.1, which—like Mill Rule 7(a), at issue in *Warren I* and *II*—"listed as causes for discharge: 'Bringing intoxicants, narcotics, or controlled substances into, or consuming [same] in the plant, or on plant premises.'" 108 S.Ct. at 368 n. 2 (quoting App. to Pet. for Cert. 31a). The Supreme Court pointed out that the arbitrator in *Misco* thought Rule II.1 was ambiguous as to whether it required immediate discharge for an infraction. The Court said: "the arbitrator ... cryptically observed that Rule II.1 merely listed causes for discharge and did not expressly provide for immediate discharge." 108 S.Ct. at 372–73. Similarly, in both *Warren I* and *II*, the arbitrators found that

---

**4.** Although certiorari was intially granted for the purpose of considering "the question of when courts may set aside arbitration awards as contravening public policy," the Court devoted the bulk of its opinion to an alternative issue presented to it by the parties: whether the Court of Appeal could properly set aside the arbitrator's award as erroneous. 108 S.Ct. at 369–73.

it was unclear whether the language in Mill Rule 7(a) meant that any violation of the rule would invariably be penalized with discharge.

In light of the *Misco* arbitrator's recognition of the ambiguity in Rule II.1, the Supreme Court said that although "it may be ... that under the contract ... it was within the unreviewable discretion of management to discharge an employee once a violation of Rule II.1 was found ... [b]efore disposing of the case on the ground that Rule II.1 had been violated and discharge was therefore proper, the proper course would have been remand to the arbitrator for a definitive construction of the contract in this respect." 108 S.Ct. at 372–73. I read this passage to convey the message that it is up to the arbitrator, in the first instance, to construe the language of the collective bargaining agreement pertaining to the appropriateness of any particular sanction for violations of work rules.[5] Given the fact that the arbitrators in *Warren I* and *II* found similar ambiguity in Mill Rule 7(a), I believe that *Misco* directs us to defer, in the first instance, to the arbitrators' interpretations of that Rule and to set those interpretations aside only if there is no arguable basis for them.

The question we must ask, then, is whether there was an arguable basis for the arbitrators' determinations, in *Warren I* and *II,* that the term "causes for discharge" in Mill Rule 7—which the arbitrators viewed as language that could modify the Company's right to discharge for "proper cause" in Article 4—was ambiguous. If so, we must then consider whether the arbitrators' construction of the term "proper cause" in Article 4 had an arguable basis in the parties' agreement.

Having reviewed the arbitrators' decisions, I believe they reasonably could find

that Mill Rule 7 was ambiguous. First, there were three contradictory phrases in the rule. It is titled "Causes for Discharge," but it then states, on the one hand, that "Violations of prescribed rules are cause for disciplinary action *of varying degrees of severity,"* and, on the other, that "Violation of the following rules *are considered* causes for discharge...." (Emphasis added.) *See supra* note 1. The "following rules" are then listed (a) through (n) and range from pernicious conduct, such as "[i]ncarceration, after being sentenced," (m), to conduct that is not so egregious, like "[u]nauthorized destruction or removal of the Company's property," (c), which, technically, would include inadvertently breaking or removing a company pencil. *Id.* Given the language of the rule and the variations in severity of the conduct covered, I do not think it was unreasonable for the arbitrators to conclude that the rule does not unambiguously provide that any and all violations of Rule 7(a) would invariably be penalized with discharge. Second, the arbitrators found this ambiguity reinforced by the Company's own Safety Policy handbook, which stated that the conduct addressed in Mill Rule 7(a) *may* result in immediate discharge. *See supra* at pp. 829–30 & note 2. Third, upon analyzing past practices of the Company for violations of Mill Rule 7, the arbitrators discovered that, in virtually every instance, the Company warned employees before taking disciplinary action and penalized employees with suspension, not discharge. App. at 117–18; 89 Lab.Arb. at 699. For all these reasons, it was not unreasonable for the arbitrators to conclude that Mill Rule 7(a) was ambiguous. Having determined that the language of that rule was not clear in its modification of Article 4, the arbitrators were then free to construe the Company's right to discharge "for proper cause."[6]

**5.** The majority apparently reads the earlier part of this quoted language to suggest that *Misco* presented no issue concerning the scope of the arbitrator's authority, and even if it did, the Court might reach the same result as the panel in *Warren I* and the majority in this case, *see* maj. op. at 828 (point (2)). I disagree with that reading since it takes, in isolation, only one part

of the pertinent passage. *Compare id. and* 108 S.Ct. at 372–73.

**6.** The majority seizes upon language in the arbitrator's decision, where—after determining that Mill Rule 7 is ambiguous and he must therefore construe the term "proper cause" in Article 4—he states that he concurs with the Company

*"Supplementary Rules of the Plant"*

In *Misco*, the Supreme Court noted that the arbitrator looked to the same seven criteria for determining whether the Company violated the collective bargaining agreement upon discharging the employee that the arbitrators applied in *Warren I* and *II*. *Misco*, 108 S.Ct. at 368 & n. 5.[7] Those seven criteria have become accepted standards for arbitrators' determinations of the propriety of management's discharge of employees. At least in the paper industry—as evidenced by their use in the *Misco* and *Warren I* and *II* arbitrations—these criteria are established supplementary rules that guide arbitrators' construction of collective bargaining agreements. Indeed, in *Warren II*, the Company itself argued for the application of these criteria. App. at 86–87. Through the application of these criteria, the arbitrators in *Warren I* and *II*, like the arbitrator in *Misco*, correctly took into consideration "supplementary rules of the plant" to reach the conclusion that the Company did not discharge the employees for "proper cause."

The two criteria standing out perhaps most clearly in this regard are those calling for an assessment of the Company's past practices regarding sanctions imposed for violations of Mill Rule 7 and consideration of whether the severity of the discipline is reasonably related to the offense and the employee's record. Taking into consideration those criteria in *Warren I* and *II*, the arbitrators, in each case, decided that the Company lacked "proper cause" to discharge the employees for their conduct. Since those arbitrators legitimately could consider those criteria as "supplementary rules of the plant" in assessing the Company's right to discharge the employees under the collective bargaining agreement, *Misco*, 108 S.Ct. at 371, I see no reason to overturn their awards.

In sum, given the arguable ambiguity in the contract concerning the Company's right to immediately discharge employees under Mill Rule 7, the Company's past practices and other considerations specific to the plant, the arbitrators, in *Warren I* and *II*, *arguably* could have decided that the employees' violations of that rule were neither "causes" nor "proper causes" for discharge. I would conclude that, in both cases, the arbitrator was "arguably construing or applying the contract and acting within the scope of his authority." *Misco*, 108 S.Ct. at 371. Therefore, the fact that we might be "convinced he committed serious error does not suffice to overturn his decision." *Id.*

that *arbitrators generally* consider synonymous the language "proper cause," "just cause," or "cause." The majority concludes from this that logic leads inescapably to the conclusion that "proper cause" in Article 4 must be identical to the items that "are considered causes for discharge" in Mill Rule 7. This construction overlooks the arbitrator's finding that the language in Mill Rule 7 does not provide that every violation will invariably result in discharge. Thus, one side of the equation, "causes for discharge," is ambiguous. Moreover, the arbitrator did not say that *he construed* "proper cause" to be the same as "cause" *for the purposes of construing Mill Rule 7 together with Article 4.* He said only that *arbitrators generally* view the terms synonymous in the context of the seven-part test they apply for deciding whether there was cause for discharge in any particular case. In other words, once the express terms of the contract covering discharge are ambiguous, as they are in this case, arbitrators turn to a seven-part test to determine whether there was "cause," "just cause," or "proper cause" for discharge—viewing those terms as synonymous. If "cause" happens to be the word used in the contract, arbitrators will still apply the test for "just cause" or "proper cause"; fairness always plays a role in the construction of the term.

7. The Court pointed out that the "arbitrator based his finding that there was not just cause for discharge on his consideration of seven criteria: ... the reasonableness of the employer's position, the notice given to the employee, the timing of the investigation undertaken, the fairness of the investigation, the evidence against the employee, the possibility of discrimination, and the relation of the degree of discipline to the nature of the offense and the employee's past record." *Id.*