UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 96-2211

EL MUNDO BROADCASTING CORPORATION,

Plaintiff, Appellee,

v.

UNITED STEELWORKERS OF AMERICA, AFL-CIO CLC,

Defendant, Appellant.



APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen C. Cerezo, U.S. District Judge] 



Before

Boudin, Circuit Judge, 

Aldrich, Senior Circuit Judge, 

and Lynch, Circuit Judge. 



David R. Jury, Assistant General Counsel, United Steelworkers of 
America, with whom Hilary E. Ball-Walker and Cooper, Mitch, Crawford, 
Kuykendall & Whatley were on brief for appellant. 
Luis D. Ortiz Abreu with whom Frances R. Colon Rivera and Goldman 
Antonetti & Cordova were on brief for appellee. 



June 2, 1997


ALDRICH, Senior Circuit Judge. The United 

Steelworkers of America, AFL-CIO CLC (the "Union") appeals

from an order of the district court granting summary judgment

to appellee El Mundo Broadcasting Corporation ("El Mundo"),

vacating an arbitration award in favor of the Union. It also

appeals the court's denial of its cross motion for summary

judgment to enforce the award. We affirm.

I. Background 

This cases arises from the Union's attempt to

proceed on a grievance covered under a collective bargaining

agreement (the "CBA") between the Union and El Mundo and in

effect from September 1991 through September 16, 1994.

Section XLV of the CBA describes the grievance procedure as

follows:

Sec. 1 - The contracting parties shall
follow the following procedure to settle
on complaints, disputes or grievances
related to the construction of this
bargaining agreement which arise between
both:

First Step: The complaining employee
shall take his/her case directly to or
through the shop steward in his/her
department to grievant's immediate
supervisor within three (3) days after
the occurrence of the act or action which
gave rise to the complaint or claim. The
supervisor shall have up to two (2) days
to rule on the case, and must immediately
notify the shop steward, or the grievant,
in writing, of his/her decision.

Second Step: If the solution at the
First Step is unsatisfactory to the
grievant, he/she, on his/her own or

-2-

through the shop steward, within three
(3) days of being notified of the
decision at the First Step, may bring the
case to the head of the department where
the employee works, who shall have up to
two (2) days to rule on the matter
submitted, and must notify in writing the
grievant or shop steward of his/her
decision, within the period specified
herein.

Third Step: If there is no solution
satisfactory to the parties at the Second
Step, the grievant or the shop steward,
may submit the case in writing, no later
than three (3) days after being given the
decision in the Second Step, to the
Grievance Committee which is created
hereinbelow . . . .

b) The Grievance Committee shall
hear and see the testimonial and
documentary evidence submitted by
the parties and shall make its
decision, based on all of the
evidence within ten (10) days from
the date on which the case is
submitted to it . . . .

Sec. 3 - Arbitration: No later than ten
(10) days from the date on which the
decision is issued by the Grievance
Committee, either of the parties may
bring its case before an arbitrator . . .
the parties shall have the opportunity to
present their case once more before the
arbitrator, who in his/her decision must
adhere to the terms of this Bargaining
Agreement and to the submission being
submitted to him . . . .

In November 1992, a full-time editor position

became available. El Mundo did not post the position as

required under the CBA. On December 9, 1992, the Union

received a "personnel action" advising it that El Mundo had

given the editor position to one Sandra Lopez effective

-3-

November 23, 1992. On December 16, Juan Villalongo

("Villalongo"), President of Local 9314, sent a letter to

Jose Mendoza ("Mendoza"), El Mundo's personnel manager,

alleging that El Mundo had violated the CBA by failing to

post the editor position and to consider two other employees

with greater seniority than Lopez. On January 5, 1993,

Mendoza replied to Villalongo, denying the Union's

allegations and reminding him of a meeting the previous

November where Villalongo had not objected when Mendoza

suggested eliminating the posting process and giving the

editor position to Lopez, in effect agreeing through his

silence. Villalongo did not respond. Nothing further

happened until March 8, 1993 when the Union sent Mendoza a

"Grievance Report." El Mundo's response was that the

grievance was not arbitrable because the Union had failed to

comply with the procedures and time limits for filing a

grievance under the CBA. On March 19, 1993, not having

complied with the Second Step, the Union filed a petition for

the designation of an arbitrator with the Bureau of

Conciliation and Arbitration.

Boiled down, we note five presently significant

matters. First, Section 1 provides, "[t]he contracting

parties shall follow the following procedure. . . ." 

(Emphasis ours.) Second, all time requirements are notably

firm and short. Third, the complaining employee "shall take 

-4-

his/her case" to the employer's attention "within three (3) 

days after the occurrence." Fourth, within three days after 

an employer decision the dissatisfied party may submit to the

Grievance Committee. Fifth, the only provision for bringing

the "case before an arbitrator" is (Sec. 3), "no later than

ten (10) days from the date on which the decision is issued

by the Grievance Committee."

Item third was done too late, unless this grievance

was a new grievance, occurring every day. The fourth was not

done, ever. The fifth did not occur unless seeking an

arbitrator before a Grievance Committee decision qualifies as 

"no later than ten days from the date on which the decision

is issued." This was waived, however, on the issue of

procedural arbitrability, by El Mundo's specific submission,

leaving procedure, to the degree open under the agreement, to

the arbitrator. John Wiley & Sons, Inc. v. Livingston, 376 

U.S. 543, 557-58 (1964).

II. The Arbitration 

A. Introduction 

The parties were unable to agree on the question to

be submitted. Accordingly, each provided the arbitrator with

its own version of the question. The Union's petition

described the issue to be arbitrated as:

The Company['s] grant[ing of] the
job vacancy of Editor, without its being
posted for the information of the
interested employees, to an employee with

-5-

less seniority, there being personnel
with more seniority and equally able to
perform it, among them the injured party.

The petition repeated El Mundo's response, which was, simply,

that the case was not arbitrable.

The arbitrator, purporting to rely upon local rules

when the matter to be decided had not been agreed on, said,

in his award, that the question was:

[W]hether the grievance is
arbitrable or not in its procedural
aspect. Should he/she decide in the
negative the grievance shall be
dismissed. Should he/she rule that it is
arbitrable, he/she shall issue the
remedy.

Pausing here, there was a basic question facing the

district court.

B. Finality 

It is essential for the district court's

jurisdiction that the arbitrator's decision was final, not

interlocutory. See, e.g., Local 36, Sheetmetal Workers Int'l 

v. Pevely Sheetmetal Co., 951 F.2d 947, 949-50 (8th Cir. 

1992); Orion Pictures Corp. v. Writers Guild of Am. W., Inc., 

946 F.2d 722, 724 (9th Cir. 1991). We start by what was

before him.

The arbitrator heard testimony from Mendoza on

behalf of El Mundo and received into evidence copies of

documents he provided. Along with the correspondence between

Mendoza and Villalongo, El Mundo provided the arbitrator with

-6-

copies of two earlier arbitration awards arising from similar

belated circumstances and finding in favor of El Mundo based

on the Union's failure to proceed timely with grievances.

The Union provided no testimony and no documentation, and,

apparently, only half-heartedly attempted to justify its

failure to adhere to the CBA time limits.

The arbitrator's view of the issue, ante, we read 

to be, (1) the arbitrator will determine whether, under the

agreement, the grievance was arbitrable, viz., timely. (2)

If not arbitrable, he would order it dismissed. (3) If

arbitrable, he shall order "the remedy." As to this last,

with neither party presenting evidence on the merits, we

consider the only remedy open was an order to follow the

grievance procedure.

The award was as follows:

[W]e find that the grievance is
arbitrable in its procedural aspect,
since it is of a continuous nature.

Discussion of the grievance is
ordered at the third step of the
procedure for Grievances. We consider
that since this matter has already been
discussed with the Personnel Manager, it
would [sic] a futile exercise to go back
to the first two steps of the procedure.

If the grievance has to be ruled
upon on its merits by this arbitrator,
the claim, if it is in order, shall be
retroactive to March 8, 1993, the date on
which the Union filed the document
"Grievance Report."

-7-

In finding jurisdiction without discussion, the

district court assumed this to be a final order. Even more

to the point, the Union, representing the grievant, in its

pleading specifically so stated:

2. The subject matter at issue has
been arbitrated, and a final award which
is binding between the parties, under the
terms and conditions of the CBA and/or
applicable law, has been issued.

The Union is bound by its pleading.1

III. Analysis 

A. Is the Award Reviewable? 

In general, even final and binding arbitration

awards are not subject to judicial review. See General 

Drivers, Warehousemen & Helpers, Local 89 v. Riss & Co., 372 

U.S. 517, 519 (1963); United Steelworkers v. Enterprise Wheel 

& Car Corp., 363 U.S. 593, 596 (1960). In United 

Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 

29, 38 (1987), the Court said, "[A]s long as the arbitrator

is even arguably construing or applying the contract and

acting within the scope of his authority, that a court is

 

1. While unnecessary under the circumstances, we deal
briefly with the argument that the arbitrator's third
paragraph was a retention of jurisdiction. Third Step, the
processing by the Grievance Committee, is a proceeding all by
itself. A disappointed party may subsequently seek
arbitration, but it would be a choice, a new proceeding, not
preordained. We regard the arbitrator's statement as to the
date the grievance should begin to be merely a spelling out
of the interpretation on which he based his finding that the
claim was a day to day claim arising daily. It had no
independent consequences.

-8-

convinced he committed serious error does not suffice to

overturn his decision." At the same time the Court stated

that "the arbitrator's award settling a dispute with respect

to the interpretation or application of a labor agreement

must draw its essence from the contract and cannot simply

reflect the arbitrator's own notions of industrial justice."2

If the arbitrator fails to meet this standard, "courts have

no choice but to refuse enforcement of the award."

Enterprise Wheel, 363 U.S. at 597. We feel that in the 

present case this admittedly, extremely narrow exception,

exists because the arbitrator enlarged the agreement and

exceeded his authority under the CBA.

B. Was There a Continuing Violation? 

To comply with grievant's "obligation to file

promptly or lose his claim," Sabree v. United Bhd. of 

Carpenters & Joiners Local No. 33, 921 F.2d 396, 402 (1st 

Cir. 1990), the arbitrator found that the claim "is of a

continuous nature;" "arises and is renewed from day to day."

For this he cited arbitration decisions where an employer

 

2. We have found there may be critical distinctions between
Misco and claims which may be made in other cases. In Misco, 
"[t]he specific issue was whether, under the contract, the
arbitrator could limit the evidence before him to the
evidence that had been before the employer at the time of
discharge . . . a matter on which the contract was silent."
S.D. Warren Co. v. United Paperworkers' Int'l Union, AFL-CIO, 
Local 1069, 846 F.2d 827, 828 (1st Cir. 1988) (setting aside 
arbitrator's determination under Misco as unsupported by the 
essence of the agreement.)

-9-

changed a rate of pay or work diminishing or depriving

employees of daily pay.3 The daily failure to pay was the

direct "act or action." The act or occurrence here was the

naming of a person to the editorship. Pay was not the act,

but was merely one of its consequences.

This is of logical and practical significance. In

the ordinary case of loss of pay, or of work, the matter can

be remedied in due course, as of the date of a late

grievance, if it still continued, without prejudicing the

employer. A belated order that a grievant should oust an

incumbent of a special office requiring posting and have her

position, disturbs settled order. If recognized simply to

the extent of giving the grievant the increased salary, it

will be paying her for work she is not doing, and doubles the

employer's costs.

The appointment of an editor is a specific

occurrence. Clearly an employer has a right to have an

appointment settled at the outset, and require that an

employee claiming loss of it complain promptly, and not be

 

3. Quaker State Refining Corp., 78 LA 1328 (1982) 
(continuing violation from loss of pay through union's
failure to object to erroneous designation of seniority);
Lockheed Missiles & Space Co., 61 LA 90 (1972) (employer 
farmed out work to non-union employees); Sears, Roebuck & 
Co., 39 LA 567 (1962) (reduction in commission and loss of 
pay raise). The arbitrator did not mention, if only as shop
procedure, two similar cases, but where El Mundo prevailed.
See In re Judith Borunet, Case No. A-1320 (1989); In re Ramon 
Viscarrondo and Luis Enrique Marrero, Case No. A-2250 (1983). 

-10-

allowed to wait until such time as serves his/her

convenience. The arbitrator's purported logic and treatment

of plain language has rejected this right. By misstating the

basic nature of the occurrence the arbitrator read the time

provisions out of the contract, ignoring its "essence."

Paperworkers, ante. We affirm the rulings of the district 

court.

-11-