**CRAFTS PRECISION INDUSTRIES, INC., Plaintiff, Appellant,**

v.

**LODGE NO. 1836 OF DISTRICT 38, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Defendant, Appellee.**

No. 89–1460.

United States Court of Appeals,
First Circuit.

Heard Oct. 4, 1989.

Decided Nov. 20, 1989.

Harold N. Mack, with whom Nathan L. Kaitz, Morgan, Brown, & Joy, Boston, Mass., were on brief, for plaintiff, appellant.

Thomas F. Birmingham, with whom Flamm & Birmingham, Boston, Mass., was on brief, for defendant, appellee.

Before BOWNES, Circuit Judge, BROWN,* Senior Circuit Judge, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

Crafts Precision Industries, Inc. (the "Company" or "Crafts") discharged an employee, John Kierstead, because Kierstead refused to follow a supervisor's direct order to train the son of Crafts' new owner. The Company and Kierstead's union, Lodge 1836 of the International Association of Machinists and Aerospace Workers (the "Union"), sought arbitration. The Company and the Union agreed that the issues for the arbitrator were:

> Was the discharge of John A. Kierstead on September 14, 1987 for just cause? If not, what shall be the remedy?

The arbitrator decided that Kierstead's conduct fell within the scope of a Company shop rule that listed as one "example[ ]" of

> conduct [that] may result in suspension, or immediate discharge, for the first offense: ...
>
> 1. Insubordination, willful disregard for, or refusal to comply with instructions from Management/Supervisory personnel.

The arbitrator was aware that the Collective Bargaining Agreement between the Company and the Union says (1) that the

> direction of the working forces, including ... the right to ... discipline or dis-

---

* Of the Fifth Circuit, sitting by designation.

charge for just cause ... [is] vested exclusively in the Employer.

and (2) that

Employees shall comply with all reasonable shop rules.

Nonetheless, the arbitrator held that, given past practice at the plant, Kierstead's resulting expectations, Kierstead's record, and his polite behavior, the Company did not have "just cause" to dismiss Kierstead. The arbitrator ordered a period of suspension without pay instead.

Subsequently, the Company asked a federal district court to set aside the arbitral award as contrary to the Collective Bargaining Agreement. The Company argued that, once the arbitrator found a violation of the shop rule, the Company had the exclusive right under the Collective Bargaining Agreement to determine an appropriate penalty. The district court disagreed and refused to set aside the award. The Company appeals that decision to us. We conclude that the district court's decision was legally proper.

We begin by repeating what we said in *Berklee College of Music v. Massachusetts Federation of Teachers Local 4412*, 858 F.2d 31 (1st Cir.1988), *cert. denied,* — U.S. ——, 110 S.Ct. 53, — L.Ed.2d — (1989). Although an arbitrator's decision must fall within the bounds of his contractually delegated authority, that authority typically (and certainly here) includes the power to interpret the contract itself. The Supreme Court recently reemphasized that an

arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. *But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.*

*United Paperworkers Int'l v. Misco*, 484 U.S. 29, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (emphasis added). This language makes

clear that any "exception" to the normal rule (that forbids the court to find an arbitrator's interpretation outside the authority delegated to him by the contract) is extremely narrow. *See Berklee*, 858 F.2d at 32; *S.D. Warren Co. v. United Paperworkers' Int'l*, 846 F.2d 827, 828 (1st Cir.) (*Warren III*), *cert. denied,* — U.S. ——, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988). Indeed, we have written that we shall uphold an arbitrator's interpretation of a contract as long as we can find some "plausible argument that favors his interpretation." *Berklee*, 858 F.2d at 32–33.

We can find several "plausible arguments" that support the arbitrator's determination that Kierstead's violation of the shop rule was not "just cause" for discharge. The shop rules themselves, for example, say that "insubordination" is an example of "conduct" that *"may* result in suspension, *or* immediate discharge" (emphasis added). The words "may" and "or" suggest that some kinds of insubordination may warrant "discharge," while other, less serious instances may warrant only "suspension;" they thereby imply that minor insubordination *does not* warrant discharge under the shop rules or under the Collective Bargaining Agreement. Alternatively, the Collective Bargaining Agreement, which says that "Employees shall comply with all reasonable shop rules," *does not* state expressly that violation of a shop rule is always "just cause" for discharge; and, if it is, an arbitrator could still plausibly find that the "insubordination" shop rule, insofar as it permits "immediate discharge" of someone in Kierstead's circumstances, is not "reasonable."

Thus, the language of the Agreement here is substantially more open, or ambiguous, than the language at issue in *S.D. Warren Co. v. United Paperworkers' Int'l*, 815 F.2d 178 (1st Cir.) (*Warren I*), *vacated,* 484 U.S. 983, 108 S.Ct. 497, 98 L.Ed.2d 496 (1987), *on remand,* 845 F.2d 3 (*Warren II*), *cert. denied,* — U.S. ——, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988), and *Georgia–Pacific Corp. v. Local 27, United Paperworkers Int'l*, 864 F.2d 940 (1st Cir.

1988). In those cases, we held that the arbitrator had exceeded his authority under the contract. But, in the *Warren* cases, the contract itself *expressly* said that "violation" of "Mill Rule 7" was *"cause[ ] for discharge"* (and that the employer had "the sole right" to "discharge employees" for cause). *See Warren I,* 815 F.2d at 180 *and Warren III,* 846 F.2d at 827 (emphasis added). The arbitrators in those cases specifically found a violation of "Mill Rule 7." Given the contractual language, this court did not see how the arbitrator could have found that dismissal was improper without violating basic laws of logic. *See Warren I,* 815 F.2d at 184; *Warren II,* 845 F.2d at 8; *Warren III,* 846 F.2d at 827–28. Similarly, in *Georgia–Pacific,* the contract provided that "[a]ny employee may be discharged for just cause" and then expressly listed the conduct that the arbitrator said occurred as one *"of the causes for immediate discharge." See Georgia–Pacific,* 864 F.2d at 942 (emphasis added). Once again, given language so clear, this court saw no logical way for the arbitrator to find that there was "no just cause" for discharge.

Here, by contrast, as we have said, the relevant language permits several plausible interpretations that support the arbitrator's result. Whether we would find these interpretations correct were it up to us to interpret the contract is beside the point. The question is whether these arguments make the arbitrator's interpretation plausible. It is clear to us that they do. Indeed, we find this a far easier case in this respect than *Berklee,* where we upheld an arbitrator's determination that a grievance filed fifteen days after the relevant action was timely, even though the contractual language stated that the grievance "must" be filed "within ten ... days after the action." *See Berklee,* 858 F.2d at 32.

The Union asked the district court to award it attorneys' fees on the ground that the Company had sought judicial review of the arbitrator's decision "without justification." *See Courier–Citizen Co. v. Boston Electrotypers Union No. 11,* 702 F.2d 273, 282 (1st Cir.1983); *International Ass'n of Machinists Dist. 776 v. Texas Steel Co.,* 538 F.2d 1116, 1121–22 (5th Cir.1976), *cert.*

*denied,* 429 U.S. 1095, 97 S.Ct. 1110, 51 L.Ed.2d 542 (1977). The district court decided not to award attorneys' fees. The union argues strenuously that failure to award attorneys' fees in this case will invite costly and time-consuming challenges to arbitration awards and undermine the national policy in favor of prompt and voluntary resolution of labor disputes.

 We can reverse the district court's decision only for "abuse of discretion." *See Atlantic Richfield Co. v. Manges,* 702 F.2d 85, 87 (5th Cir.1983) (per curiam); *Lewis v. Anderson,* 692 F.2d 1267, 1269 (9th Cir.1982). We cannot find such an abuse in respect to the parties' filings in the district court, the bulk of which were made after *S.D. Warren* (decided Mar. 31, 1987) but before our decision in *Berklee* (decided Sept. 27, 1988). In *Berklee,* however, we made clear that the *Warren* cases did not represent any new approach; rather, they were consistent with *Misco,* for language and logic placed them within *Misco's* exception. We repeated that the "exception" permitting a court to overturn an arbitrator's contract interpretation is "extremely narrow" and should be applied only if no "plausible argument" favors that interpretation. *See Berklee,* 858 F.2d at 32. The facts of *Berklee,* moreover, were more favorable to the employer, whom the court ruled against, than the facts of the present case. We think that had the Company brought its case after *Berklee,* the district court might well have found the Company's pursuit of the case to be "without justification." In the future, we expect employers in this circuit to find guidance not only in the *Warren* cases, but in *Berklee* and this case, as well.

The judgment of the district court is

*Affirmed.*