# United States Court of Appeals
## For the First Circuit

No. 00-1994

KEEBLER COMPANY,

Plaintiff, Appellee,

v.

TRUCK DRIVERS, LOCAL 170,

Defendant, Appellant.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]


Before

Boudin, Circuit Judge,
Bownes, Senior Judge,
and Lynch, Circuit Judge.


Scott W. Ellis, with whom Richard J. Rafferty, Jr., and
Eden Tolins & Rafferty were on brief, for appellant.
Kent D.B. Sinclair, with whom Seyfarth Shaw was on brief,
for appellee.


April 23. 2001

LYNCH, **Circuit Judge**. On April 27, 1999, the Keebler

Company discharged an employee, Michael Menchin, for gross

insubordination and fighting on the job.  Menchin and his

union, Truck Drivers, Local 170, took the matter to

arbitration, as they were entitled to do under the Union's

collective bargaining agreement with the company.  The

arbitrator found that Keebler did not have just cause to

terminate Menchin, but did have just cause to suspend him, and

ordered his reinstatement without back pay.  Keebler filed an

action in federal court to vacate the arbitral award; the

Union counterclaimed for enforcement.  The district court

granted Keebler's motion for judgment on the pleadings,

finding that the arbitrator had clearly departed from the

language of the collective bargaining agreement.  The Union

appeals.  In light of the high degree of judicial deference

owed to arbitral awards, we reverse.

## I.

Judicial review of arbitral awards is "extremely

narrow and exceedingly deferential."  Bull HN Info. Sys. v.

Hutson, 229 F.3d 321, 330 (1st Cir. 2000) (quoting

Wheelabrator Envirotech Operating Servs. v. Mass. Laborers

Dist. Council Local 1144, 88 F.3d 40, 43 (1st Cir. 1996)).  As this court recently noted, "disputes that are committed by contract to the arbitral process almost always are won or lost before the arbitrator.  Successful court challenges are few and far between."  Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000).

Where a collective bargaining agreement commits the parties to arbitration, the arbitrator's interpretation of the agreement is the one they have "bargained for" and must abide by.  E. Assoc. Coal v. United Mineworkers of Am., Dist. 17, ____ U.S. ____, 121 S. Ct. 462, 466 (2000).  The job for a reviewing court "ordinarily is limited to determining whether the arbitrator's construction of the collective bargaining agreement is to any extent plausible."  Exxon Corp. v. Esso Workers' Union, Inc., 118 F.3d 841, 844 (1st Cir. 1997), abrogated on other grounds by E. Assoc. Coal, supra (citing United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-38 (1987)).  Even if a court strongly disagrees with the arbitrator's decision, that is not enough to vacate the arbitral award "as long as the arbitrator is even arguably construing or applying the contract."  Misco, 484 U.S. at 38.

The district court found that the arbitrator's decision did not rest on a plausible construction of the collective bargaining agreement, but simply reflected "his own brand of industrial justice." United Steelworkers of Am. v. Enter. Wheel and Car Corp., 363 U.S. 593, 597 (1960). Specifically, the court found that the arbitrator exceeded his contractual authority by: (1) requiring Keebler to meet a "clear and convincing evidence" standard of proof rather than the more usual "preponderance of the evidence" standard; (2) holding that there was no "fighting on the job" because Keebler had not shown by clear and convincing evidence that Menchin started the fight in question; and (3) not explicitly discussing Keebler's claim that Menchin's termination was warranted due to his "gross insubordination" in addition to his fighting on the job.

We review the district court's decision de novo. See Bull HN, 229 F.3d at 330. Because the heart of the legal analysis turns on the language of the pertinent collective bargaining agreement provision, we recount it in full. Article 10 of the agreement provides:

-4-

The Employer shall not discharge nor suspend any employee without just cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the same complaint against such employee to the employee, in writing, and a copy of the same to the Union affected, except that no warning notice need be given to an employee before he is discharged if the cause of such discharge is dishonesty, drinking, and/or drunkenness, sale, use, or possession of illegal drugs during working hours, willful destruction of Company property, or recklessness resulting in a serious accident while on duty, gross insubordination, or the carrying of unauthorized passengers, and/or fighting on-the-job.

## II.

We discuss the three grounds for the district court's decision seriatim, and in addition discuss a fourth argument made by Keebler that the district court found unnecessary to address.

## 1. Standard of Proof

The arbitrator required Keebler to establish its case by clear and convincing evidence. Keebler argues that the arbitrator exceeded his authority in doing so because nothing in the text of the collective bargaining agreement provided for a heightened standard of proof, and in the absence of such provision, the customary civil standard -- "preponderance of the evidence" -- should control. The

-5-

district court agreed, finding no justification for the arbitrator's departure from the customary standard of proof. The court rejected the rationale of the arbitrator, who thought such a departure was warranted because Menchin had been terminated for "criminal conduct," in that the fight in question had led to an assault-and-battery charge against Menchin that was pending at the time.

We share the district court's skepticism about the merits of the arbitrator's rationale. It is unclear why the existence of a criminal proceeding should ratchet up the standard of proof in a related but independent arbitral proceeding about the termination of employment. Even so, such skepticism is not enough to vacate the arbitrator's decision. Arbitration is a creature of contract. Here, the collective bargaining agreement is entirely silent as to the standard of proof to be used by the arbitrator. Where an arbitration agreement is silent, court customs do not stand as binding default rules. See Slaney v. Int'l Amateur Ath. Fed'n, --- F.3d ---, 2001 U.S. App. LEXIS 4923, at *24 (7th Cir. Mar. 27, 2001) ("[P]arties that have chosen to remedy their disputes through arbitration rather than litigation should not expect

the same procedures they would find in the judicial arena."). Rather, the arbitrator is free to set his own rules of procedure so long as he stays within the bounds of fundamental fairness. Compare Gen. Drivers, etc. v. Sears, Roebuck & Co., 535 F.2d 1072, 1076 (8th Cir. 1976) (given national policy favoring arbitration of collective bargaining grievances, arbitrator's procedural rulings are not subject to judicial review), with Ramirez-de-Arellano v. Am. Airlines, 133 F.3d 89, 91 (1st Cir. 1997) (arbitration must meet minimal requirements of fairness). Applying a heightened standard of proof to terminations resulting from potentially criminal conduct, while judicially unorthodox, is not fundamentally unfair. Thus, given the agreement's silence on the issue, the choice of standard was within the arbitrator's discretion. See Gen. Drivers, 535 F.2d at 1075-76 (finding nothing impermissible in arbitrators' choice to use "clear and convincing evidence" standard in reviewing promotion decision); Amalgamated Meatcutters v. Neuhoff Bros. Packers, Inc., 481 F.2d 817, 819-20 (5th Cir. 1973) (finding nothing impermissible in arbitrator's choice to use "beyond a

reasonable doubt" standard where employees were terminated for stealing from the company).

## 2. Fighting on the Job

Menchin was fired after a physical altercation with his supervisor. The Union challenged Menchin's termination on the ground that he had fought in self-defense. The arbitrator was unable to determine how the incident began, but he specifically found that Menchin did not "sucker punch" his supervisor as claimed and could find no other evidence sufficient to prove that Menchin provoked the altercation. Thus, the arbitrator declined to find that Menchin had engaged in "fighting on-the-job" on the ground that Keebler could not prove by clear and convincing evidence that Menchin started the fight.

Keebler argues, and the district court agreed, that the term "fighting on-the-job" unambiguously encompasses any physical fighting at work, whether offensive or defensive, so that the arbitrator's narrower construction of the term was implausible. Keebler's argument is without merit; the arbitrator's construction of the term was patently plausible. Courts themselves are no strangers to the ambiguity latent in

-8-

facially absolute prohibitions against acts of violence. Crimes of murder, assault, and the like are routinely construed to contain exceptions for acts taken in self-defense or upon provocation. The arbitrator acted well within his bounds in interpreting the contractual prohibition against "fighting on-the-job" in analogous fashion.

### 3. Gross Insubordination

Before Menchin's physical altercation with his supervisor, the two had an aggravated verbal exchange. Keebler argues, and the district court agreed, that the arbitrator erred by failing to discuss whether Menchin's conduct in the exchange constituted gross insubordination, which the collective bargaining agreement lists as a possible ground for immediate discharge. Consequently, Keebler concludes, the arbitrator's decision cannot be fairly said to draw its essence from the collective bargaining agreement. For support, Keebler cites a Fourth Circuit case for the proposition that "where . . . the arbitrator fails to discuss critical contract terminology, which terminology might reasonably require an opposite result, the award cannot be considered to draw its essence from the contract."

Clinchfield Coal Co. v. District 28, United Mine Workers of Am., 720 F.2d 1365, 1369 (4th Cir. 1983), cited in Champion Int'l Corp. v. United Paperworkers Int'l Union, 168 F.3d 725, 731 (4th Cir. 1999).

The result in Clinchfield was justified but the proposition Keebler quotes is something of an overstatement. Arbitrators ordinarily are under no obligation to explain the reasons for an award -- even where the contractual basis for the award is ambiguous. Enter. Wheel, 363 U.S. at 597-98. In Clinchfield, the underlying problem with the arbitrator's decision was that the result seemed impossible to square with certain provisions of the contract; without some discussion of the provisions by the arbitrator, the court was forced to conclude that the arbitral award did not draw its essence from the contract.[1]

---

[1]    Specifically, the arbitrator had reinstated employees who were laid off allegedly as a result of the company's decision to license out some of its "coal lands." The collective bargaining agreement, however, only protected employees from layoffs resulting from the licensing out of "coal mining operations;" the agreement explicitly provided that its protections did not apply to layoffs resulting from the licensing out of "coal lands." The arbitrator failed to address this critical difference in terminology. See 720 F.2d at 1368-69. Likewise, in Champion International, supra, the arbitrator

-10-

By contrast, here the arbitrator's award is not impossible to square with the provision of the collective bargaining agreement permitting immediate discharge for gross insubordination. Indeed, the arbitrator's award can easily be understood to rest on the view that Menchin did not commit <u>gross</u> insubordination. While the arbitrator did not use precisely such terms, he arrived at this conclusion in so many words upon reviewing Menchin's conduct during the verbal exchange. The arbitrator concluded: "While I find that [Menchin's words to his supervisor] indicated unacceptable disrespect . . . and were worthy of discipline, I do not find that a dischargeable event [ ] occurred during the argument . . . ." Similarly, the arbitrator's award states that Keebler "did not have just cause to terminate Michael Menchin, but it did have just cause to suspend him."

awarded a type of bonus to the grievant employees when such bonuses were only available under a policy that was not applicable to them. <u>See</u> 168 F.3d at 730-31. The reviewing court found the arbitrator's failure to discuss a certain provision of the collective bargaining agreement to supply further evidence that the award did not draw its essence from the agreement. <u>See</u> <u>id.</u> at 731.

-11-

Thus, in substance, the arbitrator found some degree of insubordination, but not the sort of gross insubordination sufficient to constitute just cause for immediate termination. He did not fail to address the issue in his decision; and even if he had, the award would still be compatible with the above reading and hence deserving of judicial deference. Cf. Supervalu, 212 F.3d at 67 (because an arbitrator has no duty to state the grounds for his award, reviewing court may uphold the award on grounds not employed by the arbitrator himself).

4. Alteration of Form of Discipline

Finally, in somewhat of a turnaround from the preceding argument, Keebler argues that in finding Menchin's conduct during the verbal exchange "worthy of discipline" and just cause for suspension, the arbitrator effectively found that Menchin committed gross insubordination. Having found gross insubordination, the argument continues, the arbitrator was bound to uphold Menchin's discharge; he had no authority to alter the form of Menchin's discipline from termination to suspension. For support, Keebler cites a string of cases for the proposition that, once an arbitrator finds that an employee committed some act specifically listed in the

-12-

collective bargaining agreement as providing just cause for termination, the arbitrator is not free to determine that the act does not warrant termination but rather warrants some lesser penalty.  See Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944-45 (1st Cir. 1988); S.D. Warren Co. v. United Paperworkers Int'l Union, 845 F.2d 3, 8 (1st Cir. 1988); Metro Chevrolet, Inc. v. Union de Tronquistas de Puerto Rico, 835 F.2d 3, 5 (1st Cir. 1987).

Keebler's argument turns on two assumptions: (1) that the collective bargaining agreement unambiguously lists gross insubordination as providing just cause for termination; and (2) that the arbitrator in effect found gross insubordination.  Both assumptions are unfounded.  As to the first, the agreement merely says that employees may neither be discharged nor suspended without just cause and the benefit of a warning, except that no warning need be given before terminating an employee for, inter alia, gross insubordination.  It does not expressly state that gross insubordination will always be just cause for termination (only that when it is, the employee may be terminated without warning).  And indeed, on prior occasions we have held very

-13-

similar language to be ambiguous in this respect.  Exxon, 118

F.3d at 845-46; Crafts Precision Indus., Inc. v. Lodge No.

1836, etc., 889 F.2d 1184, 1185-86 (1st Cir. 1989).

As to the second assumption, the arbitrator's

decision need not be read to rest on a finding of gross

insubordination.[2]  Again, the decision can easily be

understood to rest on a finding that Menchin acted

insubordinately, but that his conduct did not rise to the

level of "gross" insubordination.  Cf. Crafts Precision, 889

F.2d at 1185-86 (reading agreement to "suggest that some kinds

of insubordination may warrant 'discharge,' while other, less

serious instances may warrant only 'suspension'").[3]

---

[2]     In the cases Keebler relies upon, the arbitrator
unambiguously found that the grievant had committed conduct
listed in his employment agreement as grounds for termination.
See Georgia-Pacific, 864 F.2d at 944 (arbitrator found that
employee's claim that he was sick when he actually went to play
golf constituted "dishonesty"); S.D. Warren, 845 F.2d at 6-7
(arbitrator found employee had possessed marijuana on employer's
property); Metro Chevrolet, 835 F.2d at 5 (arbitrator found that
employee had been absent without authorization).

[3]     Indeed, this is an easier case than Crafts Precision.
In that case, the agreement listed simple "insubordination" as
an example of conduct that "may result in suspension, or
immediate discharge, for the first offense."  The arbitrator
found this language to permit a distinction between
insubordination to a degree warranting suspension and

-14-

## III.

The decision of the district court is reversed and the case is remanded for entry of judgment enforcing the award.

---

insubordination to a degree warranting discharge.  See Crafts Precision, 889 F.2d at 1185.  By contrast, here, the collective bargaining agreement itself explicitly draws such a distinction, as it specifies not simply "insubordination" but "gross insubordination" as an example of conduct requiring no warning before discharge.