**Slip Op. 01-60**

# United States Court of International Trade

```
STEEL AUTHORITY OF INDIA, LTD.,
               Plaintiff,

          v.

UNITED STATES,
               Defendant

          and

BETHLEHEM STEEL CORPORATION; U.S. STEEL
GROUP, A UNIT OF USX CORPORATION; IPSCO
STEEL INC.,
               Defendant-Intervenors.
```

Before: Pogue, Judge

Court No. 00-03-00099

[Agency action affirmed with respect to application of total facts available, and remanded with respect to application of adverse inferences for action consistent with this opinion.]

Decided: May 22, 2001

Wilmer, Cutler & Pickering (John D. Greenwald, Robert C. Cassidy, Jr., Juan A. Millán) for Plaintiff.

David W. Ogden, Assistant Attorney General, David M. Cohen, Director, Erin Powell, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Scott D. McBride, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

Schagrin Associates (Roger B. Schagrin) for Defendant-Intervenor IPSCO Steel Inc.

Skadden, Arps, Slate, Meagher & Flom LLP (Robert E. Lighthizer, John J. Mangan) for Defendant-Intervenors Bethlehem Steel Corporation and U.S. Steel Group, a unit of USX Corp.

**OPINION**

**Pogue, Judge**: This action is before the court on Plaintiff's motion for judgment on the agency record pursuant to USCIT Rule 56.2. Plaintiff, Steel Authority of India, Ltd. ("SAIL"), contests the final determination of sales at less than fair value ("LTFV") by the International Trade Administration of the U.S. Department of Commerce (the "Department") in the investigation of certain cut-to-length ("CTL") carbon-quality steel plate from India. See Certain Cut-to-Length Carbon-Quality Steel Plate Products from India, 64 Fed. Reg. 73,126 (Dep't Commerce Dec. 29, 1999), as amended, 65 Fed. Reg. 6,585 (Dep't Commerce Feb. 10, 2000) (final determ.)("Final Determination"). Specifically, Plaintiff challenges the Department's use of facts available in lieu of Plaintiff's reported U.S. sales data and the application of adverse inferences in the selection of available data used to make the Department's determination. The court has jurisdiction pursuant to 28 U.S.C. § 1581(c)(1994).

**Background**

Bethlehem Steel Corporation, Gulf States Steel, Inc., IPSCO Steel Inc., Tuscaloosa Steel Corp., the United Steelworkers of America, and the U.S. Steel Group (collectively the "Petitioners"), initiated this investigation with the Department on February 16,

1999.[1]  Petitioners alleged that imports of CTL steel plate from the Czech Republic, France, India, Indonesia, Italy, Japan, the Republic of Korea, and the Former Yugoslav Republic of Macedonia were being or are likely to be sold at LTFV.  On March 16, 1999, the Department initiated an investigation to determine whether certain CTL steel plate was being sold at LTFV.  See Initiation of Antidumping Duty Investigations:  Certain Cut-to-Length Carbon Quality Steel Plate, 64 Fed. Reg. 12,959 (Dep't Commerce March 16, 1999)(initiation notice).

Upon initiation of the investigation, the Department issued the first of its many questionnaires.  Throughout the proceeding, SAIL experienced difficulties in compiling the requested data.  See Pl.'s Mem. Supp. Mot. J. Agency R. at 11-14.  From the onset of the investigation, however, SAIL advised the Department of these difficulties.  See Case Brief on Behalf of Steel Authority of India, Ltd., P.R. Doc. No. 114 at 5, Pl.'s App. at Ex. 2 (Nov. 15, 1999).

As a result of SAIL's difficulties in responding to the information requests, the Department, on several occasions, used supplemental questionnaires to further clarify SAIL's responses. See Final Determination, 64 Fed. Reg. at 73,127. Despite the problems in SAIL's responses, the Department attempted to verify

---

[1]Only Bethlehem Steel Corporation, the U.S. Steel Group, and IPSCO Steel Inc. filed briefs as Defendant-Intervenors in this action.

the information.  After conducting a 21-day verification, the Department observed that SAIL "failed to report a significant number of home market sales; was unable to verify the total quantity and value of home market sales; and failed to provide reliable cost or constructed value data for the products."  Id. The Department concluded that SAIL's information was untimely, incomplete and incorrect.  As a result, "SAIL's questionnaire responses could not be verified."  Id.  On December 29, 1999, the Department published its final determination, holding that the application of total adverse facts available was required to determine the appropriate dumping margin.  Id.

## Parties' Arguments

### A.   Plaintiff's Arguments

SAIL disputes the Department's application of total adverse facts available.  Although SAIL agrees that the use of facts available was appropriate for some of the information requested by the Department, primarily home market sales and cost data, SAIL argues that this method should not have been used for its U.S. sales information.  See Pl.'s Mem. Supp. Mot. J. Agency R. at  16. Instead of total facts available, the Department, according to SAIL, should have used facts available only in part, i.e., with regard to all information other than the U.S. sales data.  See id. at 23.

In making this argument, SAIL relies on a plain language interpretation of 19 U.S.C. § 1677m(e).[2]  See id. at 18.  SAIL argues that any "information" that satisfies 1677m(e) must be used by the Department in making its final determination.  See id. at 16-18.  In this case, SAIL believes that the U.S. sales data satisfies the requirements of 1677m(e).  See id. at 24-27.  As such, it considers the U.S. sales data to be any "information" within the meaning of the statute.  Therefore, SAIL claims, the Department is required by 1677m(e) to use the U.S. sales data in computing SAIL's dumping margin.  By using total facts available,

---

[2] 1677m(e) provides:

(e) Use of Certain Information

In reaching a determination under . . . this title the administering authority and the Commission shall not decline to consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by the administering authority or the Commission, if –

(1)  the information is submitted by the deadline established for its submission,
(2)  the information can be verified,
(3)  the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,
(4)  the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by the administering authority or the Commission with respect to the information, and
(5)  the information can be used without undue difficulties.

19 U.S.C. § 1677m(e)(1994).

SAIL argues, the Department is ignoring the plain meaning of the statute.

SAIL also argues that the Department erred in applying adverse inferences in violation of 19 U.S.C. § 1677e(b).[3]  See id. at 30. Although SAIL was unable to fully comply with the Department's questionnaires, SAIL claims that its inability was due to difficulties in gathering and compiling data.  See id.  These difficulties made it impossible for SAIL to timely and reliably respond to the Department.  SAIL argues that, as demonstrated by the numerous documents and supplemental questionnaires submitted to the Department, it acted to the best of its ability, even though the best of its ability still resulted in incomplete submissions. See id. at 33.

---

[3]1677e(b) reads, in pertinent part, as follows:

(b) Adverse Inferences

If the administering authority of the Commission (as the case may be) finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority or the Commission, the administering authority or the Commission (as the case may be), in reaching the applicable determination under this subtitle, may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available.

19 U.S.C. § 1677e(b)(1994).

**B.   Department's Arguments**

The Department, on the other hand, argues that there is a "long standing practice" of using total facts available when there are "essential components of the response" that are inaccurate and unreliable. Final Determination, 64 Fed. Reg. at 73,130. Partial facts available, in the Department's view, is only used to fill minor gaps in the record. Id. Regardless, the Department argues that the five criteria of 1677m(e) were not met, even for Plaintiff's U.S. sales. See Def.'s Mem. Opp'n to Mot. J. Agency R. at 15-16.   "[T]he U.S. sales database," according to the Department, "contained errors that . . . in isolation were susceptible to correction [but] when combined with the other pervasive flaws in SAIL's data lead [the Department] to conclude that SAIL's data on the whole is unreliable." Final Determination, 64 Fed. Reg. at 73,127.   Due to the deficiencies in SAIL's questionnaire responses, the Department argues that it had the option of disregarding all or part of the original and subsequent responses. See Def.'s Mem. Opp'n to Mot. J. Agency R. at 18.  In this situation, the Department disregarded all the responses in order to calculate what it considered a more accurate dumping margin.

The Department also argues that the application of adverse inferences was warranted.   The incomplete and unreliable questionnaires submitted by SAIL demonstrate, according to the

Department, that SAIL failed to act to the best of its ability.
See id. at 25.  Because SAIL did not fully comply, the Department
argues that application of total adverse facts available was
appropriate.

## Standard of Review

In reviewing the final results of an administrative review,
the court will uphold the Department's determination unless it is
"unsupported by substantial evidence or otherwise not in accordance
with law[.]" 19 U.S.C. § 1516a(b)(1)(B)(1994).

## Discussion

### A.    Total Facts Available

The Department may resort to facts available when the
requested information is not "provided . . . by the deadlines for
submission . . . or in the form and manner requested."  19 U.S.C.
1677e(a)(2)(B).  Before resorting to facts available, however, the
Department is required to comply with 1677m(d)[4] and (e).  In
accordance with 1677m(e), the "Commission shall not decline to
consider information that is submitted by an interested party and

---

[4]1677m(d) requires the Department to "promptly inform the
person submitting the response of the nature of the deficiency
and shall, to the extent practicable, provide that person with an
opportunity to remedy or explain the deficiency in light of the
time limits established for the completion of the investigation .
. . ."  19 U.S.C. § 1677m(d).

is necessary to the determination but does not meet all the applicable requirements[,]" if the information satisfies five criteria.  19 U.S.C. § 1677m(e).  The information must (1) be submitted in a timely manner, (2) be verified, (3) be not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination, (4) be able to be used without undue difficulties, and (5) the interested party must demonstrate that it acted to the best of its ability in providing the information.  See id.

SAIL argues that 1677m(e)'s "use of certain information" provision refers to particular categories of information, specifically to SAIL's submitted data on U.S. sales, as separate and distinct submissions of information.  The Department, on the other hand, argues that the term "information" refers to all submitted responses by the interested party, not just a category within the responses.

**1.    The Department's Interpretation of 1677m(e) is Reasonable**

The statute at issue, 1677m(e), does not define "information."  Rather, it refers to "information that is submitted by an interested party and is necessary to the determination . . . ."  19 U.S.C. § 1677m(e).  This language, on its face, does not indicate whether the term "information submitted" refers to a specific category of information, as argued by SAIL, or all the information

submitted by the interested party, as argued by the Department.[5]

Moreover, neither the legislative history of the statute nor the

Statement of Administrative Action ("SAA") accompanying the Uruguay

Round Agreements Act[6] further clarifies Congress's intent regarding

"information submitted."  As a result, there is no clear statutory

directive as to when the Department must use partial facts

available.  See Heveafil Sdn. Bhd. v. United States, 25 CIT __, __,

slip-op. 01-22 at 9 (Feb. 27, 2001).  The statute is, therefore,

ambiguous on this issue.

     As the statute is unclear, the question for the court is

whether the agency's interpretation of the statute is "reasonable

in light of the language, policies and legislative history of the

statute."  Corning Glass Works v. United States Int'l Trade Comm'n,

799 F.2d 1559, 1565 (Fed. Cir. 1986)(emphasis omitted)(discussing

general statutory interpretation).  Here, the Department based its

---

[5]Defendant-Intervenors Bethlehem Steel Corporation and U.S. Steel Group argue in their brief that the statute is unambiguous on its face that "information" refers to all of an interested party's responses.  See Def.-Int. Mem. Opp. Pl.'s Mot. J. Agency R., at 30 ("It is clear from the statute's own terms that it does not require the acceptance of fragmented information . . . .")(filed by Bethlehem Steel Corp. and U.S. Steel Group). According to these Defendant-Intervenors, "by definition, such [fragmented] information would be too incomplete to form the basis of a reliable determination."  Id.

[6]The SAA is "an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application."  19 U.S.C. § 3512(d).

reading of the statute on several factors.  First, in order to make a reliable antidumping determination, the Department needs the respondent's data on U.S. sales, home market sales, cost of production, and constructed value.  See Def.'s Mem. Opp'n to Mot. J. Agency R. at 20.  These four factors are "necessary to the determination."  19. U.S.C.  § 1677m(e).  The Department interpreted "information" to refer to all four factors because the absence of either cost of production, home market sales, or U.S. sales data makes it impossible for the Department to make price-to-price comparisons.  Final Determination, 64 Fed. Reg. at 73,130. Such an interpretation is, therefore, reasonable and consistent with the statute, because one of the goals of the antidumping statute is to enable the Department to calculate an accurate dumping margin.  See D&L Supply Co. v. United States, 113 F.3d 1220, 1223 (Fed. Cir. 1997)("The statutory directive that Commerce use [of facts available] is intended to serve 'the basic purpose of the [anti-dumping] statute – determining current margins as accurately as possible.'")(quoting Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990)).  Interpreting the "use of certain information" provision to refer to all the information submitted by an interested party is a reasonable construction of the statute.[7]

---

[7]The court defers, in this case, to the Department's interpretation of the statute because it is reasonable.  The court also finds that the Department's interpretation is

Moreover, if the Department were forced to use the partial information submitted by respondents, interested parties would be able to manipulate the process by submitting only beneficial information.  Respondents, not the Department, would have the ultimate control to determine what information would be used for the margin calculation.  This is in direct contradiction to the policy behind the use of facts available.  See Rhone Poulenc, Inc. v. United States, 13 CIT 215, 225, 710 F. Supp. 341, 347 (1989), aff'd, Rhone Poulenc, 889 F.2d 1185 (holding that the BIA rule, the forerunner to facts available, is designed to "prevent a respondent from controlling the results of an administrative review by providing partial information").  As a result, the Department's interpretation of the statute is consistent with the purpose of the anti-dumping provisions, demonstrating the reasonableness of its interpretation.

The Department's refusal to accept SAIL's U.S. sales data is also consistent with its long standing practice of limiting the use of partial facts available.  More specifically, the Department only uses partial facts available to "fill gaps" in the record.  See American Silicon Tech. v. United States, 24 CIT __, __, 110 F. Supp. 2d 992, 999 (2000).  This practice is also consistent with

---

persuasive and, therefore, "entitled to respect" under the less deferential standard set forth in Skidmore.  See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); Christensen v. Harris County, 120 S. Ct. 1655, 1663 (2000).

the SAA.  See SAA, H.R. Rep. No. 103-826, at 870 (1994)(referring to the use of "facts available to fill gaps in the record . . .").

As discussed above, the situation presented in this case is similar to Heveafil.  In that case, the Department rejected all of Heveafil's submissions after the company failed verification of "product specific direct material costs."  The court held that "[a]lthough there are circumstances in which Commerce must utilize 'partial facts available,' there is no clear statutory guidance regulating such utilization." Heveafil, 25 CIT at __, slip op. 01-22, at 9.  As a result, the court upheld the Department's decision to "reject a respondent's submitted information in toto when flawed and unverifiable . . . data renders all price-to-price comparisons impossible."  Id. (internal citations omitted). Similarly, here, the Department's legal interpretation is reasonable.  See id.

## 2.    The Department's Application of 1677m(e) is Supported by Substantial Evidence

The Department rejected SAIL's submissions due to pervasive and persistent deficiencies "which cut across all aspects of SAIL's data."  Def.'s Mem. Opp'n to Mot. J. Agency R. at 20.   This decision is supported by substantial evidence in the record.  See Heveafil, 25 CIT at __, slip op. 01-22, at 9 (affirming the Department's use of total facts available when the Department's determination to reject all of the respondent's responses is supported by substantial evidence).  On several occasions SAIL was

unable to submit information by the applicable deadlines.  See

Def.'s Mem. Opp'n to Mot. J. Agency R. at 2-17; Pl.'s Mem. Supp.

Mot. J. Agency R. at 11-14.  Also, as demonstrated by the

Verification Report, the Department was unable to verify essential

components of SAIL's questionnaire responses.  See Memo and

Verification Report, C.R. Doc. No. 42, Pl.'s App. at Ex. 5 (Nov. 4,

1999); Determination of Verification Failure, C.R. Doc. No. 51,

Def.'s App. at Ex. 31 (Dec. 12, 1999).  And, as discussed earlier,

the information considered as a whole would result in an inaccurate

dumping margin.[8]  SAIL itself recognized that its home market and

cost data were not useable.  See Pl.'s Mem. Supp. Mot. J. Agency R.

at 6.  Considering SAIL's submissions in their entirety, the

information was (1) untimely submitted, (2) unverified, (3)

incomplete, and (4) could not be used without undue difficulties.[9]


**B.    Adverse Inferences**

     Once the Department determines that the use of facts available

---

[8]The Department also argues that SAIL's U.S. sales data independently failed to satisfy the requirements of 1677m(e). Because of our decision on the definition of "information submitted," it is unnecessary to decide this issue.

[9]1677m(e) also requires that the interested party demonstrate that it has acted to the best of its ability.  See 19 U.S.C. § 1677m(e).  Whether SAIL acted to the best of its ability is addressed in sub-section 2 below, discussing adverse inferences.  Regardless, as SAIL's data do not satisfy four of the five elements of 1677m(e), the Department's decision to use facts available is supported by substantial evidence.

is required, the Department must decide whether adverse inferences should be applied in selecting among available data. See Gourmet Equipment Corp. v. United States, 24 CIT __, __, slip op. 2000-78 at 13 (July 6, 2000). In order to use adverse facts available, the Department must make a separate finding, supported by substantial evidence, that the "interested party . . . failed to cooperate by not acting to the best of its ability to comply with a request for information. . . ." 19 U.S.C. § 1677e(b). This finding must be "reached by 'reasoned decisionmaking,' including . . . a reasoned explanation supported by a stated connection between the facts found and the choice made." Electricity Consumers Resource Council v. Federal Energy Regulatory Com., 747 F.2d 1511, 1513 (D.C. Cir. 1984)(citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)). Otherwise, the Department's decision-making process will be "arbitrary and capricious."[10]

In making its determination that an interested party did not

---

[10]The court considers not only the Department's interpretation of the statute but its decision-making process as well. The Department's decision-making process is regulated by the "arbitrary and capricious" standard. 5 U.S.C. § 705(2)(A); see also Motor Vehicle Mfrs. Ass'n v. Farm Mutual Auto. Ins. Co., 463 U.S. 29, 41-43 (1983)(describing the role of rationality in reviewing an agency's decision-making process).

This review differs from Chevron review in that it focuses on whether the Department "articulate[d] with reasonable clarity its reasons for decision[,]" rather than on the reasonableness of the Department's interpretation. See Gary Lawson, Outcome, Procedure and Process:  Agency Duties of Explanation for Legal Conclusions, 48 Rutgers L. Rev. 313, 319 (1996)(quoting Greater Boston Television Corp. v. FCC, 444 F.2d 841, 851 (D.C. Cir. 1970)).

act "to the best of its ability," the Department cannot merely recite the relevant standard or repeat its facts available finding. See Borden, Inc. v. United States, 22 CIT __, __, 4 F. Supp. 2d 1221, 1246 (1998).  Rather, in order to satisfy its statutory obligations, the Department must be explicit in its reason for applying adverse inferences.  If respondent claims an inability to comply, in order to apply adverse inferences the Department must also conclude that the exporter had the ability to comply with the request for information and did not do so.  See Krupp Thyssen Nirosta GmbH v. United States, 24 CIT __, __, slip op. 2000-89 at 14 (July 31, 2000); Kompass Food Trading Int'l v. United States, 24 CIT __, __, slip-op. 2000-90 at 8 (July 31, 2000); Gourmet Equipment, 24 CIT at __, slip op. 2000-78 at 15.[11]  Here, the Department concluded that SAIL "did not cooperate to the best of its ability during the course of this investigation and consequently . . . used an adverse inference in selecting a margin as facts available."  Final Determination, 64 Fed. Reg. at 73,127-28.  The Department reached this conclusion because of "repeated problems in the timeliness and completeness of [SAIL's]

---

[11]Respondents who do not submit complete and accurate information, but who have the ability to comply with the Department's request for information, may still be found to act to the best of their ability if the information was not supplied because of simple inadvertence.  In these situations the Department must show a willfulness on the part of the respondent or behavior below the standard of a reasonable respondent in order to apply adverse inferences.  See Nippon Steel Corp. v. United States, 118 F. Supp. 2d 1366, 1378-79 (2000).

submissions." Id.  The Department also based its finding that SAIL failed to cooperate on the verification results, which "revealed that SAIL's data was significantly inaccurate, incomplete or otherwise unreliable."  Id.

The unreliability of data, however, standing alone, may not prove that an interested party failed to act to the best of its ability.  In cases, such as that presented here, where the respondent claims the inability to comply with the agency's request for information, the "to the best of its ability standard" requires, at a minimum, "that a respondent could comply, or would have had the capability of complying if it knowingly did not place itself in a condition where it could not comply."  Nippon Steel Corp. v. United States, 24 CIT __, __, 118 F. Supp. 2d 1366, 1378-79 (2000).  Here, as in Borden, the Department made no finding that SAIL refused to cooperate or could have provided the information requested but didn't, thereby justifying the use of adverse inferences.  See Borden, 22 CIT at __, 4 F. Supp. 2d at 1246 (holding that the Department's reasoning that, "De Cecco's failure to provide complete and accurate information in a timely manner and its failure to clarify inconsistencies in its submissions to the record demonstrate that De Cecco has failed to cooperate to the best of its ability in this investigation[,]" was not an additional finding that De Cecco had failed to act to the best of its ability, but rather was a restatement of the facts available finding); see

also <u>U.S. Steel Group v. United States</u>, slip-op. 00-156 (Nov. 21, 2000); <u>Motor Vehicle Mfrs.</u>, 463 U.S. at 42-43.  Such a finding is necessary or the Department's decision-making process will be rejected as "arbitrary and capricious" and, therefore, not in accordance with law.

Throughout the investigation, SAIL alerted the Department to the difficulties it experienced in gathering and submitting the requested information.  SAIL advised the Department that much of the company's data was in the form of "hand-written records," and that these records were widely dispersed in locations all across India.  <u>See</u> Pl.'s Mem. Supp. Mot. J. Agency R. at 32.  This court has recognized that there are many reasons for a respondent's failure to accurately respond other than a purposeful lack of cooperation.  For example, "[a] respondent can fail to respond because it was not able to obtain the requested information, did not properly understand the question asked, or simply overlooked a particular request."  <u>Mannesmannrohren-Werke AG v. United States</u>, 23 CIT __, __, 77 F. Supp. 2d 1302, 1316 (1999).  In concluding that SAIL failed to cooperate to the best of its ability, the Department must have a basis for discounting SAIL's claims.  Here, it is not apparent that the Department had a basis for discounting SAIL's reasons for its failure to fully and timely respond to the questionnaires.

In its Final Determination, the Department failed to identify

its reasons for concluding that SAIL refused to cooperate to the best of its ability.  See, e.g., Motor Vehicle Mfrs., 463 U.S. at 43 ("The agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" (quoting Burlington Truck Lines, 371 U.S. at 168)).  Rather, it appears that the Department concluded that SAIL willingly did not comply merely because SAIL did not fully respond to the questionnaires.  This issue, therefore, is remanded so that the Department may make specific findings as to whether SAIL had the ability to respond and failed to do so or otherwise reconsider its decision to apply an adverse inference in choosing the available data to calculate the dumping margin.


## Conclusion

For the foregoing reasons, the court sustains the agency's determination in part and remands in part.

                                        _____

                                        Donald C. Pogue
                                             Judge

Dated:    May 22, 2001
          New York, New York