337 F.Supp.2d 241 (2004)
WYMAN-GORDON COMPANY, INC., Plaintiff,
v.
UNITED STEEL WORKERS OF AMERICA, AFL-CIO-CLC, Local 2285 and United Steel Workers of America, AFL-CIO-CLC, Defendants.
No. CIV.A.03-40023-NMG.
United States District Court, D. Massachusetts.
March 15, 2004.
Louis P. Aloise, Michael C. Wilcox, Aloise & Wilcox PC, Worcester, MA, Marc A. Antoneth, Baker & Hostetter LLP, Washington, DC, for Plaintiff.
*242 Lara Sutherin, Pyle, Rome Lichten & Ehvenberg P.C., Boston, MA, for Defendants.

MEMORANDUM & ORDER
GORTON, District Judge.
In this civil action concerning a dispute between company management and a labor union, Plaintiff Wyman-Gordon Company, Inc. ("Wyman-Gordon") seeks judicial review of an arbitration award reinstating an employee who was discharged for insubordination to and physical contact with a supervisor in violation of company policy.
I. Factual Background
The following facts are undisputed and are set forth as alleged in the complaint (Docket No. 1), in memoranda in support of cross-motions for summary judgment (Docket Nos. 8 and 12) and the oppositions thereto (Docket Nos. 10 and 13). Wyman-Gordon is a Massachusetts Corporation engaged in the production of closed-die forgings and extrusions for the construction of commercial and military aircraft. The Defendant United Steelworkers of America, Local 2285 ("Local 2285") is affiliated with the United Steelworkers of America, AFL-CIO-CLC and is a labor organization representing area steel employees. The Defendant United Steelworkers of America, AFL-CIO-CLC ("the International Union" and, together with Local 2285, "the Union") is an international union representing steelworkers and is based in Pittsburgh, Pennsylvania.
Wyman-Gordon and the Union entered into a collective bargaining agreement ("the Agreement") on April 6, 1997 which has since been renewed. The Agreement runs through March 31, 2007. Article IX of the Agreement provides for the arbitration of disputes concerning the interpretation and application of the Agreement and includes a provision that "the decision of the arbitrator shall be final and binding upon both parties." Article X of the Agreement gives Wyman-Gordon "the right, at any time, to adopt reasonable rules and regulations," regarding employee conduct and provides for the means to enforce those rules and regulations. Article X also provides that any formal disciplinary action taken against an employee is subject to "the normal grievance and arbitration procedure except as qualified herein."
Stephen Jenkins ("Jenkins") was employed by Wyman-Gordon as a Die Inspector Leader at Wyman-Gordon's plant in Grafton, Massachusetts. On December 21, 2001, Jenkins and his supervisor, Russell Manning ("Manning") had a disagreement on the shop floor concerning an inspection report that was, or should have been, prepared to address a crack that was developing in a certain die. When Jenkins and Manning argued over who was responsible for the preparation of the report, their disagreement rapidly devolved into a fracas. Jenkins allegedly abused Manning verbally and struck him on the hand or the arm. The Local Union contends that as the two argued, Manning raised his arm and Jenkins merely "pushed it down." In accordance with Wyman-Gordon's "Zero Tolerance Policy" prohibiting verbal and physical abuse, Jenkins was suspended with pay for five days pending an investigation of the incident.
After an investigation, Wyman-Gordon terminated Jenkins's employment on grounds of insubordination and violation of the company's Zero Tolerance Policy. In January 2002, the Union challenged Jenkins's discharge as being without just cause. In accordance with the Agreement, the arbitrator, Paul J. Dorr ("Dorr"), after a hearing and an investigation, sustained the Union's grievance on January 2, 2003. *243 Dorr based his decision on 1) language in the Agreement interpreted by other arbitrators to afford "significant weight," but not "absolute deference," to the employer's choice of discipline and 2) the discipline previously imposed upon employees for similar infractions. Dorr found that just cause existed to suspend but not to terminate Jenkins for his actions. Thus, Dorr directed that Jenkins "shall be reinstated to his former position and made financially whole retroactive to the date of termination with all contractual rights and benefits unimpaired, less suspension without pay for four (4) weeks[.]"
Wyman-Gordon has not complied with Dorr's decision and has instituted the instant action to set aside and vacate the "Award" on the ground that Dorr exceeded his authority by ordering the reinstatement of an employee discharged for a violation of Wyman-Gordon's rules. The Union has counterclaimed for enforcement of the "Award" and has also requested attorneys' fees. Now pending before this Court are cross-motions for summary judgment of Wyman-Gordon and the Union.
II. Legal Analysis
A. Standard of Review
The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991), quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.
Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.
B. Analysis
Wyman-Gordon and the Union agree that no genuine issue of material fact exists.[1] The outcome of this case, therefore, is governed by whether either (or neither) party is entitled to judgment as a matter of law.

I.
The law is well-settled that a court reviewing the decision of an arbitrator *244 is invested with limited authority to vacate an arbitral award. See United Paperworkers, Int'l v. Misco, Inc., 484 U.S. 29, 37-38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); Poland Spring Corp. v. United Food & Commercial Workers Local 1445, 314 F.3d 29, 33 (1st Cir.2002). Courts presume that parties who have contracted to authorize an arbitrator to settle their disputes have agreed to accept the arbitrator's "view of the facts and of the meaning of the contract." Kraft Foods, Inc. v. Office & Prof. Empl. Local 1295, 203 F.3d 98, 100 (1st Cir.2000), quoting Misco, 484 U.S. at 37, 108 S.Ct. 364. Unless the arbitrator's decision fails to "draw its essence from the collective bargaining agreement," courts are bound to enforce the award and may not review the merits of the contract dispute. W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of America, 461 U.S. 757, 764, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), citing Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
In the instant case, Wyman-Gordon asks this Court to hold that Arbitrator Dorr's decision did not draw its essence from the Collective Bargaining Agreement. Instead, according to Wyman-Gordon, the company was vested with complete authority to determine the appropriate sanction for Jenkins under the agreement. It is asserted that, by virtue of that authority, Dorr exceeded his own authority by determining that 1) the dismissal of Jenkins was without just cause, 2) a suspension was a more appropriate remedy for Jenkins's violation and 3) Jenkins should be reinstated.
Finally, Wyman-Gordon avers that Dorr inappropriately applied company precedent with respect to discipline of supervisory, non-bargaining unit employees to the facts of Jenkins's case, which involved a bargaining unit employee. Thus, according to Wyman-Gordon, Dorr's arbitration award is entitled to even less deference as a result of that application of inapposite precedent.
That argument is insufficient to allow summary judgment in favor of Wyman-Gordon. Article X of the Collective Bargaining Agreement governs the discipline of employees and allows for some flexibility in the meting out of such discipline. That article provides that, in enforcing its rules and regulations, Wyman-Gordon has the right to "discharge, suspend or otherwise discipline" its employees "for just cause." Provisions relating to arbitration of disputes between the Union and Wyman-Gordon are found in Article IX, Section 2, which states, "[t]he Arbitrator shall be without power to change, alter or amend the language of this Agreement."
Wyman-Gordon emphasizes the latter provision to demonstrate that the company was entitled to punish Jenkins with any of the sanctions provided for in the Agreement. Moreover, Wyman-Gordon argues that Dorr violated the Agreement's provision relating to the arbitrator's power by determining that just cause did not exist for Jenkins's dismissal from the company. Wyman-Gordon's position is untenable, however, because the language of the Agreement demonstrates that discretion exists in the range of punishment available to the company and, even more importantly, Article X, Section 2 demonstrates that Wyman-Gordon's choice of punishment was subject to review for just cause by an arbitrator.
Where a range of discipline is available to an employer, courts have held that arbitrators retain significant discretion to review a company's choice of discipline. See Crafts Precision Indus., Inc. v. Lodge No. 1836, Int'l Ass'n of Machinists & Aerospace Workers, 889 F.2d 1184, 1185-86 (1st *245 Cir.1989). For example, in Crafts Precision, an employee was discharged for insubordination and the company and the union sought arbitration. Id. at 1184. The arbitrator, after considering 1) the terms of the company's shop rules and the authority granted to the company under the collective bargaining agreement, 2) past practices at the company's plant and 3) the employee's past behavior, determined that just cause did not exist to dismiss the employee and instead ordered a period of suspension without pay. Id. at 1184-85.
In reaching its conclusion, the court in Crafts Precision emphasized that the language of the collective bargaining agreement permitted "several plausible interpretations that support[ed] the arbitrator's result." Id. at 1186. Thus, according to the court, even if district or appellate courts reviewing an arbitration award were to disagree with the arbitrator's conclusion, the award must stand if the arbitrator based that conclusion on a plausible interpretation of the contractual language. Id.
Similarly, in Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8 (1st Cir.2001), the First Circuit Court of Appeals reaffirmed its earlier view that when a collective bargaining agreement is ambiguous in providing for punishment of insubordinate employees, an arbitrator's award should be enforced if it is based on a plausible interpretation of the disciplinary provision. Keebler Co., 247 F.3d at 14; Crafts Precision, 889 F.2d at 1185-86. The employee in Keebler Co. was also discharged for insubordination and the arbitrator found that Keebler lacked just cause for termination. Keebler Co., 247 F.3d at 10. The district court, relying on the decision of the Supreme Court in United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), held that
the arbitrator's decision did not rest on a plausible construction of the collective bargaining agreement, but simply reflected [the arbitrator's] own brand of industrial justice. Keebler Co., 247 F.3d at 10.
The First Circuit reversed despite its "skepticism about the merits of the arbitrator's rationale." Id. at 11. The court found the collective bargaining agreement to be ambiguous, thereby triggering an "extremely narrow and exceedingly deferential" standard of review." Id. at 10, 14, citing Bull HN Info. Sys. v. Hutson, 229 F.3d 321, 330 (1st Cir.2000)(internal cites omitted).
The facts and rationale of the cited cases merit the imposition of the same outcome in the instant case. The Agreement's provision for a range of punishment for violations of Wyman-Gordon's Zero Tolerance Policy, together with a provision for arbitration of disputes between the company and the Union demonstrates conclusively that Dorr was authorized not only to determine whether just cause existed for Jenkins's punishment, but also to determine whether just cause existed for the company to select dismissal as the appropriate choice for that punishment.
Moreover, as a matter of contract interpretation, this Court should presume that the parties intended to be bound by the terms of their bargained-for exchange. By providing for a range of discipline, and for the arbitration of disputes, the collective bargaining agreement must allow an arbitrator to review the company's decisions with respect to employee discipline. Otherwise, the arbitration provisions would be rendered mere surplusage. To afford that provision the force of inclusion in the bargained-for agreement, it must be given its full force and effect. Thus, the *246 arbitrator must logically have the contractual authority to review the company's selection of discipline.

II.
The line of cases relied upon by Wyman-Gordon to support its contention that Dorr exceeded his authority are inapposite and inapplicable. In Poland Spring Corp. v. United Food & Commercial Workers Local 1445, 314 F.3d 29, 34 (1st Cir.2002), the court relied on a fountainhead of First Circuit precedent to hold that
once an arbitrator finds that an employee has committed an act specifically listed in the collective bargaining agreement as providing just cause for termination, the arbitrator is not free to fashion a separate remedy apart from the one provided by the parties' agreement. Id., citing Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 945 (1st Cir.1988); S.D. Warren Co. v. United Paperworkers' Int'l Union, 845 F.2d 3, 8 (1st Cir.1988); Metro Chevrolet, Inc. v. Union de Tronquistas de Puerto Rico, 835 F.2d 3, 5 (1st Cir.1987).
The collective bargaining agreements in those cases differ from the one at issue in this case in the absence of a range of discipline from which an employer may choose with respect to an employee found guilty of insubordination. In other words, the disciplinary provisions in those cases amounted to automatic discharge provisions. As the court in S.D. Warren framed the issue, "[n]othing is left to the arbitrator's judgment except determining whether the rules are violated." S.D. Warren Co., 845 F.2d at 8.
In contrast, Arbitrator Dorr was authorized by the agreement to exercise his judgment in determining whether a violation of the rules occurred and whether just cause existed for termination. To arrive at the conclusion that dismissal was not justified, Dorr relied upon the past practices of the company in disciplining employees for insubordination. Wyman-Gordon asserts that Dorr relied on practices that applied to non-bargaining unit employees (Jenkins was a bargaining unit employee) and thus did not draw the essence of his decision from the contract.
As the Supreme Court instructed in Misco, this Court need not necessarily agree with the outcome reached by the arbitrator, but must determine whether the arbitrator "even arguably constru[ed] or appl[ied] the contract and act[ed] within the scope of his authority[.]" United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). This Court finds that Dorr did so. Although past practices at Wyman-Gordon may or may not have been entirely applicable to Jenkins's case, they provided Dorr with a guidepost by which he rendered a decision that was plausible based upon the contractual language in the collective bargaining agreement.

III.
As a final matter, the Union argues that Wyman-Gordon's request for judicial review of the arbitration award is entirely without justification. The Union claims that, as a result, it is entitled to attorney's fees incurred in the defense of the company's claim. That request will be denied summarily because it lacks a reasonable basis in law and does not appeal to the common sense of this Court.

ORDER
Based upon and in accordance with the foregoing, the Motion for Summary Judgment of United Steelworkers of America (Docket No. 7) is ALLOWED and the Motion for Summary Judgment of Wyman-Gordon *247 Company (Docket No. 11) is DENIED. In its opposition memorandum, Wyman-Gordon requested oral argument but, under the circumstances, that is deemed unnecessary.
So ordered.
NOTES
[1] Indeed, the only dispute of fact concerns whether Jenkins struck Manning or merely pushed his arm down but that dispute is immaterial because Wyman-Gordon's Zero Tolerance Policy prohibits physical contact of any kind made in anger.