# United States Court of Appeals
## For the First Circuit

No. 20-1136

UNIÓN INTERNACIONAL UAW, LOCAL 2415,

Plaintiff, Appellant,

v.

BACARDÍ CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[William G. Young, U.S. District Judge]

Before

Howard, Chief Judge,
Lipez, Thompson, Circuit Judges.

Richard J. Schell, with whom Miguel Simonet-Sierra and Monserrate, Simonet & Gierbolini, LLC, were on brief, for appellant.
Nicole M. Rodríguez Ugarte, with whom Enrique R. Padró Rodríguez and Silva-Cofresí Manzano & Padró LLC were on brief, for appellee.

August 9, 2021

**LIPEZ**, **Circuit Judge**.  Unión Internacional UAW, Local 2415 ("UAW" or "the Union") appeals the district court's summary affirmance of an arbitration award dismissing its wage grievance claim against Bacardí Corporation ("Bacardí" or "the Company"). The arbitrator found that the claim was not procedurally arbitrable because the UAW had failed to comply with the contractual wage grievance procedure.  The UAW argues that the arbitrator should have deemed this procedural arbitrability defect waived because Bacardí first raised it more than five years after filing an initial arbitration submission claiming a different defense, a delay incompatible with a regulation of the Puerto Rico Arbitration Bureau incorporated into the collective bargaining agreement between he parties.  Alternatively, the UAW argues that the procedural defect did not justify dismissing the entire claim because even if part of its grievance was time-barred, a portion of the grievance was timely and should have been permitted to proceed.

We think that the UAW's waiver arguments have merit. However, we are bound by an exceedingly deferential standard of review.  The UAW has not identified an error in the arbitration award so egregious as to permit us to vacate it.  See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his

authority, that a court is convinced he committed serious error does not suffice to overturn his decision."). Thus, we affirm the judgment of the district court.

I.

## A. The 2006-2011 Collective Bargaining Agreement

At the heart of this case is a wage grievance filed pursuant to a collective bargaining agreement ("CBA") between Bacardí and the UAW from January 1, 2006, through December 31, 2011. Article IX of the CBA states requirements for employees' work schedules and compensation. Among other things, it requires Bacardí to "pay each employee at the rate of two (2) times the regular hourly rate of the employee's pay . . . [for] [h]ours worked between 10:00 p.m. from Saturday and Sunday at 10:00 p.m." Bacardí is also required to pay employees two times their regular hourly rate for hours worked on certain holidays. Article XI further provides that employees who work eight-hour continuous shifts will work during their mealtime period and be "paid at a rate of seven and a half (7 1/2) regular hours and a half (1/2) double hours." The double pay is intended to compensate for "the concept of working during the mealtime."

Article VIII provides a three-tiered grievance process for complaints and grievances. At the first step, an employee must raise her grievance with a supervisor. At the second step, that employee or the UAW submits a written complaint to Bacardí's

Human Resources Director or an authorized representative.  Per the CBA,

> [s]uch complaint must state the details of the incident over which the claim is based; it must specify the section or sections of the Agreement that are considered violated, and it must propose the solution sought by the grievant employee or by the Union. Regardless of the time of any discussion in step number one, the written grievance in step number two must be presented within seven (7[]) business days following the facts of the grievance. . . . If the grievance is not presented [to] the Human Resources Director in the manner established above and within the prescribed deadline, the matter will be considered definitively decided and/or that the complaint has been withdrawn.

At the third step, the Union may request arbitration from the Director of the Conciliation and Arbitration Bureau of the Department of Labor of Puerto Rico ("the Bureau") in accordance with its regulations.  The Union must file for arbitration within seven business days following Bacardí's decision at the Second Step.  "[C]laims for wages that arise as a result of a different interpretation of the law by the Company, workers or the Union" are not subject to arbitration, but instead, are to be brought before the relevant government agency.

## B. The UAW's 2007 Grievance

On August 26, 2007, the UAW initiated the First Step of the grievance process, claiming that Bacardí was not in compliance with the CBA because it underpaid employees for mealtimes worked

on weekends and holidays.  On August 30, 2007, the UAW submitted its Second Step written complaint to Bacardí's Human Resources Department.  The complaint stated as follows:

> We hereby wish to indicate that the union does not agree with the way the company . . . is paying the meal time periods when working on Saturday to Sunday, Sunday, holidays, and others.  The payment must be made at the employee's hourly wage when working one of those days and not the regular hourly wage of the employee.  Therefore, the company is violating the collective bargaining agreement in article IX section 4 among others.  The solution sought is to be paid the unearned wages retroactively and prospectively to those affected employees.

In other words, it was the Union's view that the benefits of the double pay for certain weekends and holidays, and the double pay for the half hour mealtime period, should be compounded, meaning that employees would receive quadruple pay for those mealtime periods.

On September 6, 2007, Bacardí responded to the UAW's complaint.  Bacardí stated that the UAW had failed to indicate the specific dates of the alleged violations.  It asserted that weekend and holiday mealtimes were "being paid in the same way that we have done since the signing of the current Collective Bargaining Agreement" and this was the first complaint regarding this issue.  Bacardí denied that it was violating the CBA and asserted that the UAW's interpretation was inconsistent with the explicit language of the CBA.  In Bacardí's view, the weekend and holiday double pay

and the mealtime double pay should not be compounded, and employees do not receive extra compensation, above double pay, for mealtimes on weekends and holidays.

On September 14, 2007, the UAW requested arbitration of its complaint regarding weekend and holiday mealtime compensation. Its allegation was brought on behalf of an individual employee, Luis Santiago, and others. The Union alleged that approximately 126 employees were affected by this issue. For reasons that are not clear from the record, the Bureau apparently failed to act on the UAW's request for over five years.

## C. The 2013 Arbitration Hearing and 2014 Award

The first arbitration hearing finally took place on June 12, 2013. At the hearing, Bacardí raised a defense of substantive arbitrability,[1] claiming that the matter was not arbitrable because the CBA specifically excluded wage claims from the grievance and arbitration procedures. Both parties filed draft submissions with the arbitrator. Bacardí's submission asked the arbitrator:

> To determine in accordance with the law whether or not the evidence presented by the Union is substantively arbitrable under the Collective Bargaining Agreement. If it is determined that it is, that the Honorable Arbitrator shall schedule a hearing to hear the merits.

---

[1] "Substantive arbitrability refers to whether a dispute involves a subject matter that the parties have contractually agreed to submit to arbitration." Local 285, Serv. Emps. Int'l Union v. Nonotuck Res. Assocs., Inc., 64 F.3d 735, 739 (1st Cir. 1995).

The UAW's submission requested:

> That the Honorable Arbitrator determine whether the company is paying distillery employee[s] in accordance with the applicable law through the regular schedule of the employee[s] for the mealtime period not enjoyed and also for not paying the employees at the rate of twice the regular hourly time for hours worked according to Article 9, section 4(c), during the mealtime period not enjoyed.
>
> If the Honorable Arbitrator determines that the company is not paying in accordance with the provisions of the applicable law, to order the company to pay all affected employees such wages due for the mealtime period improperly paid as well as the penalty imposed by him. Likewise, to order the company to pay, correctly those hours worked according to Article IX, Section 4(c).

Nearly a year later, on March 26, 2014, the arbitrator issued an award rejecting Bacardí's substantive arbitrability defense and setting a merits hearing for September 24, 2014.

**D. Judicial Review in the Puerto Rico Courts, 2014-2016**

The 2014 merits hearing did not occur because Bacardí chose to appeal the arbitrator's award to the Puerto Rico courts. On April 14, 2014, Bacardí sought judicial review of the arbitration award with the Court of First Instance, Superior Part of San Juan. The court endorsed the arbitrator's rejection of Bacardí's substantive arbitrability defense. Bacardí then filed for a writ of certiorari from the Puerto Rico Court of Appeals, which was denied on June 30, 2015. Bacardí also petitioned for

- 7 -

certiorari from the Supreme Court of Puerto Rico, which denied certiorari on January 15, 2016 and issued its mandate on February 4, 2016.

**E. The 2018 Hearing and 2019 Award**

Following the proceedings in the Puerto Rican courts, the merits hearing was held on December 20, 2018.[2] At the beginning of that hearing, Bacardí raised, for the first time, a procedural arbitrability defense.[3] It argued that the UAW's claim was not arbitrable because the UAW had not followed the procedures required by the CBA. Specifically, Bacardí asserted that the UAW's written complaint did not include sufficient details of the alleged violation and that the complaint was not filed within seven days of the alleged violation. The UAW argued that this defense was waived, and the arbitrator granted the parties time to brief the issue.

---

[2] The hearing was previously scheduled for October 3, 2018. The UAW failed to appear at that hearing and the Arbitrator postponed it to December 20, 2018. The record does not otherwise account for the two-year delay between the Supreme Court mandate and the arbitration hearing.

[3] "Procedural arbitrability . . . concerns such issues as to 'whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate.'" Nonotuck Res. Assocs., 64 F.3d at 739 (quoting John Wiley & Sons v. Livingston, 376 U.S. 543, 557 (1964)).

- 8 -

On May 17, 2019, the arbitrator dismissed the UAW's claim, which had at that point been awaiting resolution for well over a decade. The arbitrator ruled that the UAW had not complied with the CBA because of "the excessively late filing of the complaint, which certainly occurred, much further [than] the seven (7) working days following the date on which the events . . . occurred; as well as the lack of specificity thereof, by not setting forth the dat[e] of the incident over which the claim is based." Thus, the arbitrator found that the claim was not procedurally arbitrable.

## F. Federal Proceedings

On June 17, 2019, the UAW petitioned for review of the 2019 award before the Puerto Rico Court of First Instance. Bacardí removed the action to the United States District Court for the District of Puerto Rico on diversity grounds pursuant to 28 U.S.C. § 1441(b).

On October 1, 2019, Bacardí filed a motion for summary judgment. The UAW opposed Bacardí's motion and filed a cross-motion for summary judgment. On December 18, 2019, the district court issued a docket order granting Bacardí's motion, denying the UAW's motion, and affirming the award of the arbitrator. The district court did not explain its decision, instead simply stating, "there is no occasion for an oral hearing or extended written analysis." The UAW appealed.

We review the district court's ruling on an arbitration award de novo. Keebler Co. v. Truck Drivers, Loc. 170, 247 F.3d 8, 11 (1st Cir. 2001). However, all "[j]udicial review of arbitral awards is 'extremely narrow and exceedingly deferential.'" Id. at 10 (quoting Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000)). The inclusion of an arbitration clause in a CBA reflects an agreement by the employer and the union "to forego a number of legal options in favor of having their disputes regarding the construction of that contract settled by an arbitrator." Ramos-Santiago v. UPS, 524 F.3d 120, 123 (1st Cir. 2008). Our deference to the arbitrator's decisions is required by "the spirit of freedom of contract." Id. In practice, this deferential standard of review means that "[a]rbitral awards are nearly impervious to judicial oversight." Teamsters Loc. Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000).

That said, there are limited circumstances under which vacatur of an arbitration award is appropriate. We may vacate an award if it is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Id. at 66 (quoting Loc. 1445, United Food & Com. Workers Int'l Union v. Stop & Shop Cos., 776 F.2d 19, 21 (1st Cir. 1985)). The

arbitrator's award must "draw[] its essence from the collective bargaining agreement" and cannot be based on "merely '[the arbitrator's] own brand of industrial justice.'" Misco, 484 U.S. at 36 (quoting Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960)). Thus, the key question in judicial review of an arbitration award is whether the arbitrator was "even arguably construing or applying the contract and acting within the scope of his authority." Id. at 38.

We also may vacate an arbitration award if it "violate[s] an 'explicit . . . well defined and dominant' public policy, as ascertained 'by reference to . . . laws and legal precedents.'" Mercy Hosp., Inc. v. Mass. Nurses Ass'n, 429 F.3d 338, 343 (1st Cir. 2005) (alteration in original) (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers, 461 U.S. 757, 766 (1983).[4]

---

[4] We have recognized other limited circumstances permitting vacatur. See Ramirez-De-Arellano v. Am. Airlines, Inc., 133 F.3d 89, 91 (1st Cir. 1997) (quoting Sunshine Mining Co. v. United Steelworkers, 823 F.2d 1289, 1295 (9th Cir. 1987)) ("Arbitration proceedings must meet 'the minimal requirements of fairness -- adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator.'"). This opinion does not discuss the fundamental fairness exception because it was not raised by the UAW. While the UAW's brief reflects general concerns about the fairness of the arbitration award, it does not argue that those concerns fall within the narrow parameters of "adequate notice, a hearing on the evidence, [or] an impartial decision by the arbitrator." Id. (quoting Sunshine Mining Co., 823 F.2d at 1295). Hence, the argument is waived.

The UAW argues that the arbitrator's award must be vacated because Bacardí's procedural arbitrability defense -- offered more than ten years after the initial grievance was filed and five years after Bacardí initially asserted a substantive arbitrability defense -- was improper on multiple grounds. Specifically, the UAW asserts that the acceptance of the belated defense violates the Bureau's regulations (which are incorporated into the contract), the judicial doctrines of judicial estoppel and law of the case, and well-defined public policy in favor of speedy resolution of disputes through arbitration.

## A. The Incorporated Arbitration Regulations

The CBA governing the arbitration proceeding in this case explicitly incorporates the regulations of the Puerto Rico Arbitration Bureau.  The UAW argues that the arbitrator egregiously misinterpreted the applicable regulations, specifically Article XIII(d).  That provision states:

> In case one of the parties alleges that the dispute is not arbitrable, they must include said claim in their submission draft and shall have the weight of the evidence regarding their claim.  The arbitrator will have discretion to elucidate the case in the merits and decide on both controversies once it is fully submitted.  Failure to comply with this provision shall mean that the arbitrability

defense of the grievance shall not be considered.[5]

In the UAW's view, this article states that any arbitrability defense not raised in an initial submission is waived. It argues that the arbitrator has no discretion to consider a defense not raised in the initial submission because the regulation's use of the verb "shall" indicates that waiver is mandatory. Bacardí did not include a procedural arbitrability defense in its initial submission in 2013. Therefore, under the UAW's reading of the regulation, that defense is waived.

Bacardí, on the other hand, asserts that Article XIII(d) does not state "that a party must include all of its arbitrability defenses in its first submission proposal, or else, it waives the same, and/or that it cannot include such defenses in a second or subsequent hearing, after the first issue that was presented to the Arbitrator through submission was resolved." Indeed, instead of requiring a party to raise "claims" (plural) in its initial

---

[5] Article XIII(d) contradicts Bacardí's position that arbitrability is akin to subject matter jurisdiction. The regulations clearly state that, under some circumstances, an arbitrability defense can be waived. Thus, any comparison to subject matter jurisdiction is unavailing. Subject matter jurisdiction is governed by Article III of the Constitution and is a constitutional requirement that can never be waived. Foisie v. Worcester Polytechnic Inst., 967 F.3d 27, 35 (1st Cir. 2020). Arbitrability, on the other hand, is a contractual agreement that can be waived under circumstances agreed to by the parties. See, e.g., El Mundo Broad. Corp. v. United Steelworkers of Am., 116 F.3d 7, 8 (1st Cir. 1997) (stating a procedural arbitrability defense was waived).

- 13 -

submission, it requires a party to raise a "claim" (singular). This phrasing does not speak to a scenario in which a party wishes to bring multiple arbitrability defenses. Thus, in Bacardí's view, "Article XIII(d) simply does not contemplate the procedural situation at hand" and does not prevent the arbitrator from considering Bacardí's second arbitrability defense.

We acknowledge the merit of the UAW's interpretation of Article XIII(d). The regulation suggests a requirement that arbitrability defenses be raised at the outset of the proceedings to facilitate speedy resolution. That speedy resolution would be undermined if parties could pursue unlimited defenses in sequential order if the first defense fails.

The UAW's position is not, however, the only plausible reading of Article XIII(d). Bacardí's reading -- and that of the arbitrator -- is arguably consistent with the plain language of the regulation. The regulation does not say anything about raising "all" defenses in the first submission draft at the risk of waiver. An arbitrator could reasonably construe Article XIII(d) narrowly and limit its applicability to its literal text. See Supervalu, 212 F.3d at 65 ("[A] party who seeks judicial review ordinarily must demonstrate that the award is contrary to the plain language of the CBA and that the arbitrator, heedless of the contract language, preferred instead to write his own prescription for industrial justice.").

- 14 -

Thus, the arbitrator's decision to accept Bacardí's belated defense was consistent with a plausible interpretation of the regulation incorporated into the contract, even if it is not the interpretation that we might prefer. We cannot substitute our preference for the plausible interpretation of the arbitrator. Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Int'l Bd. of Teamsters, Local No. 379, 29 F.3d 742, 743 (1st Cir. 1994) ("[C]ourts must resist the temptation to substitute their own judgment about the most reasonable meaning of a labor contract for that of the arbitrator and avoid the tendency to strike down even an arbitrator's erroneous interpretation of such contracts."); Misco, Inc., 484 U.S. at 37-38 (stating that even if a court detects a "serious error" in the arbitrator's interpretation of the contract, vacatur is not necessarily warranted).

## B. Judicial Estoppel and Law of the Case

The UAW raises two judicial doctrines -- judicial estoppel and law of the case -- as additional justifications for vacatur of the arbitration award. Judicial estoppel allows a court to preclude a party from raising an argument inconsistent with a prior position it took before the court. Patriot Cinemas, Inc. v. Gen. Cinemas Corp., 834 F.2d 208, 212 (1st Cir. 1987). It can be applied in the court's discretion "when 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" Id.

(quoting Scarano v. Cent, R. Co., 203 F.2d 510, 513 (3d Cir. 1953)). "Law of the case" stands for the proposition that "a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation." United States v. Bell, 988 F.2d 247, 250 (1st Cir. 1993).

Explaining the application of those doctrines here, the UAW asserts that Bacardí was estopped from raising a procedural arbitrability claim in 2018 because its 2013 submission represented that it would proceed to a hearing on the merits if its substantive arbitrability defense was denied. Along similar lines, the UAW argues that the 2014 award denying Bacardí's substantive arbitrability defense, and the affirmance of that award by the Puerto Rico courts, created a "law of the case" holding that the UAW's grievance was arbitrable and a hearing on the merits was required. Therefore, in the UAW's view, both judicial estoppel and law of the case precluded the arbitrator from dismissing its claim based on Bacardí's belated procedural arbitrability defense.

Judicial estoppel and law of the case are legal doctrines governing court proceedings. They are essentially irrelevant to the arbitration process, which is intended as an alternative to the formal judicial process. See, e.g., Gilmer v.

Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) ("[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985))). The UAW describes these two doctrines as "applicable principles of law" but does not explain why they apply to the non-judicial arbitration process. We have explained that arbitration awards "are not accorded the weight of 'judicial authority' in determining future controversies, even between the same parties or over the same issues." Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de P.R., 583 F.2d 1184, 1187 (1st Cir. 1978). And the UAW offers no case law indicating that we, or any other court, have ever vacated an arbitration award on the basis of either of these doctrines. Thus, we conclude that neither judicial estoppel, nor the doctrine of law of the case, provide a basis for vacatur.

**C. Public Policy**

The UAW argues that the arbitrator's decision to accept a belated arbitrability defense vitiates federal policy "favoring speedy settlement of industrial disputes." Ass'n of Indus. Scientists v. Shell Dev. Co., 348 F.2d 385, 389 (9th Cir. 1965) (quoting John Wiley & Sons, Inc., 376 U.S. at 559). While we agree with the UAW that public policy favors efficient dispute resolution through arbitration, that general principle does not constitute an

"explicit, well-defined, and dominant public policy" prohibiting an arbitrator from accepting a belated defense in any arbitration proceeding. See E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 63 (2000).

Moreover, Ass'n of Indus. Scientists, the Ninth Circuit case the UAW relies on as evidence of a public policy encouraging speedy arbitration, actually invokes that concern to discourage judicial interference with arbitration proceedings. 348 F.2d at 389 (quoting John Wiley & Sons, Inc., 376 U.S. at 557-59). In theory, arbitration allows for speedy dispute resolution precisely because courts rarely interfere. See Dorado Beach Hotel Corp. v. Local 610 of Hotel Emps. & Rest. Emps. Int'l Union, 959 F.2d 2, 4 (1st Cir. 1992) ("The extraordinary deference accorded an arbitrator's decision emanates from our recognition that '[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of awards.'" (alteration in original) (quoting Challenger Caribbean Corp. v. Union Gen. de Trabajadores de P.R., 903 F.2d 857, 861 (1st Cir. 1990))). We will not depart from that principle here.

**IV.**

In addition to challenging the refusal of the arbitrator to preclude Bacardí from invoking a belated procedural defense, the UAW challenges the merits of the arbitrator's ruling on that defense. This claim is subject to the same deferential standard

of review we described above. We may vacate only if the arbitrator's dismissal on procedural grounds cannot be said to "'draw[] its essence from the collective bargaining agreement." Misco, Inc., 484 U.S. at 36 (quoting Steelworkers, 363 U.S. at 596).

As outlined in Section I above, Article VIII of the CBA mandates a three-step process for raising and resolving workplace grievances. The second step of that process requires the Union to submit a written complaint "within seven (7[]) business days following the facts of the grievance." That complaint must include "the details of the incident over which the claim is based[,] . . . the section or sections of the Agreement that are considered violated, and . . . the solution sought by the grievant employee or by the Union." The CBA mandates strict adherence to these requirements, stating that "[i]f the grievance is not presented [to] the Human Resources Director in the manner established above and within the prescribed deadline, the matter will be considered definitively decided and/or that the complaint has been withdrawn."

The CBA took effect on January 1, 2006. From the start, Bacardí paid weekend and holiday mealtime wages in accordance with its interpretation of the CBA -- compensating employees with double, not quadruple, pay. On August 26, 2007, the UAW made an initial complaint regarding this method of calculating wages,

which it claimed underpaid workers. The initial complaint was followed by a written complaint on August 30, 2007. The written complaint stated, "the union does not agree with the way the company is paying the mealtime periods when working on Saturday to Sunday, Sundays, holidays, and others," but did not state the dates of alleged underpayments, the employees involved, or the hourly wages of those employees.

The 2019 arbitration award found that the UAW's written complaint failed to meet the procedural criteria required by the CBA "both in regard to the excessively late filing of the complaint, . . . as well as the lack of specificity thereof, by not setting forth the dat[e] of the incident over which the claim is based." The arbitrator stated that the UAW was required to include "specific details of [its] claim, such as the dates of the alleged violation, names of the claimants, hourly wage of the claimants and other relevant information, to place the judge in a position to decide as to the suitability of the claim." Thus, the arbitrator dismissed the grievance in its entirety.

The UAW argues that even if some portion of its grievance was untimely, dismissal of the claim in its entirety was improper. In its view, the wage grievance encompasses claims for underpaid wages over the course of approximately one and a half years -- from the effective date of the CBA, January 1, 2006, through the date of the written complaint, August 30, 2007. While most of

those claims might be time-barred, others -- specifically, claims pertaining to August 1 through August 7, 2007 -- were timely. Therefore, the UAW argues, the arbitrator should have proceeded to the merits of the claim regarding the one week that falls inside the contractual limitation period.

The UAW's focus on the timeliness of at least some portion of its claim ignores the other, equally important, defect found by the arbitrator: lack of specify of the written complaint. Even assuming the wage claim, if limited to August 1 through August 7, 2007, was not time-barred, the claim could still be dismissed for failure to meet the second step's requirement that the written complaint contain "the details of the incident." Determining what details must be included in a written complaint to satisfy the CBA's grievance procedure, and whether the Union met that requirement, is precisely the type of straightforward procedural question that is firmly within the province of the arbitrator. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002) ("'"[P]rocedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide." (quoting John Wiley & Sons, Inc., 376 U.S. at 557)); UMass Mem'l Med. Ctr., Inc. v. United Food & Com. Workers Union, 527 F.3d 1, 5 (1st Cir. 2008) (stating that issues concerning the proper filing of a grievance are "'classic'

procedural questions to be decided by an arbitrator" (quoting Nonotuck, 64 F.3d at 739)).

The arbitrator's determination that the second step of the agreed-upon grievance procedure required a written complaint that contains certain specific details ("the dates of the alleged violation, names of the claimants, [and] hourly wage of the claimants") reflects a plausible interpretation of the contract. The UAW's written complaint did not include those details and, thus, the arbitrator acted within the scope of his authority in dismissing the entire claim for lack of procedural arbitrability.

**Affirmed.**